## CORNWELL v DEPARTMENT OF SOCIAL SERVICES

Docket No. 51034. Submitted June 4, 1981, at Lansing.—Decided
    November 3, 1981.

Wanda Kegler and Darryl Cornwell are the unmarried parents of
    a minor child. Kegler had been receiving Aid to Dependent
    Children and Medicaid benefits as a result of Cornwell's ab-
    sence from the home. Cornwell, who had legally acknowledged
    paternity, returned to the home, causing Kegler to be ineligible
    for further benefits. Cornwell then applied for and received
    benefits under the unemployment of the father provisions of
    the ADC program. The child's needs were made part of the
    grant but Kegler's needs were not because the statute does not
    provide for the needs of a nonspousal parent. The Saginaw
    Circuit Court, Joseph R. McDonald, J., affirmed the administra-
    tive law judge's denial of benefits to Kegler. Kegler and Corn-
    well appeal. *Held:*

    The Social Security Act does not provide for Aid to Depen-
    dent Children-Unemployment benefits to be paid to the non-
    caretaker unmarried parent of a dependent. That law does not
    unlawfully discriminate against unmarried persons or illegiti-
    mate children nor does it impermissibly invade the parent's
    right to privacy.

    Affirmed.

1. SOCIAL SERVICES — AID TO DEPENDENT CHILDREN — SOCIAL SECU-
   RITY.

   The Social Security Act does not provide for Aid to Dependent
   Children-Unemployment benefits to be paid to the noncare-
   taker unmarried parent of a dependent child; that law does not
   unlawfully discriminate against unmarried persons or illegiti-
   mate children nor does it impermissibly invade the parent's
   right to privacy (42 USC 607).

2. CONSTITUTIONAL LAW — DUE PROCESS — EQUAL PROTECTION.

   The test of whether a statute violates either the Equal Protection

REFERENCES FOR POINTS IN HEADNOTES
[1] 79 Am Jur 2d, Welfare Laws § 13.
[2] 16A Am Jur 2d Constitutional Law §§ 740, 741.

Clause of the Fourteenth Amendment applicable to state stat-
utes or the Due Process Clause of the Fifth Amendment appli-
cable to federal acts is the same in the area of social welfare: is
the classification rationally based and free from invidious dis-
crimination.

*Lawrence F. Gambino,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Janis Meija* and *Ronald W. Carlson,* Assistants Attorney General, for defendant.

Before: Beasley, P.J., and M. J. Kelly and N. A. Baguley,* JJ.

N. A. Baguley, J. Plaintiffs appeal from a Saginaw County Circuit Court order affirming an administrative law judge's decision denying plaintiff Wandra Kegler assistance under the Aid to Dependent Children (ADC) program and Medicaid benefits.

Plaintiff Wandra Kegler had originally been receiving ADC and Medicaid benefits for the care of her dependent child, Andre Cornwell, pursuant to MCL 400.56; MSA 16.456, because the child's father was absent from the home. Plaintiff Darryl Cornwell, who had legally acknowledged paternity of the child but was not married to Kegler, returned to the home, thereby causing Kegler to be ineligible for benefits. Cornwell then applied for and received benefits pursuant to the unemployment of the father provision of the ADC program, MCL 400.56d; MSA 16.456(4). Plaintiffs' son's needs were made part of the grant but Kegler's needs were not because Michigan does not provide for the needs of a nonspousal mother.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiffs initially challenge defendant's interpretation and implementation of § 607 of subchapter IV of the Federal Social Security Act, 42 USC 607. Section 606 of the act provides for aid to the family of a needy child where the needy child has been deprived of parental support or care caused by the death, absence, or physical or mental incapacity of a parent. Coverage is expanded in § 607 to provide aid to families of a dependent child where the needy child has been deprived of parental support or care due to the father's unemployment, 42 USC 607.

Section 606 allows payments to meet the needs of the *spouse* of the relative with whom the dependent child is living if the spouse is living with the relative and "if such relative is the child's parent and the child is a dependent child * * * under section 607 of this title". The Michigan Department of Social Services interpreted this provision of § 606(b) to provide for assistance only to the legally married spouse of the relative who is receiving ADC-U benefits.[1] Thus, Kegler was not provided for in the ADC-U grant given to Darryl and Andre Cornwell.

We conclude that the Department of Social Services correctly interpreted the applicable provision of the Federal Social Security Act as not providing for aid to the noncaretaker unmarried parent of a dependent child. The act unambiguously provides for aid only to a spouse, which is defined by *Webster's New Collegiate Dictionary* (1976) to mean a married person. Unless a statute is ambi-

---

[1] The Department's Assistance Payment Manual, Item 311, eff 12-29-75, pp 4-5 provides:

"*Father and mother in the home who are not married to each other.* If one parent is incapacitated or the father is unemployed, the other parent is not an eligible recipient (unless he or she has other children in the home that are deprived and eligible for ADC) because that parent is not a spouse."

guous on its face, the words must be given their ordinary meaning. *Lake Carriers' Ass'n v Director of Dep't of Natural Resources,* 407 Mich 424, 429; 286 NW2d 416 (1979).

Plaintiffs alternatively argue that, if defendant's interpretation of the act is correct, the act then violates equal protection guarantees because it arbitrarily discriminates against unmarried persons and illegitimate children. The inquiry is the same whether this issue is analyzed under the Equal Protection Clause of the Fourteenth Amendment concerning the state statute or the Due Process Clause of the Fifth Amendment concerning the federal act. The test under either provision is whether the statutory classification in the area of social welfare is rationally based and free from invidious discrimination. *Weinberger v Salfi,* 422 US 749; 95 S Ct 2457; 45 L Ed 2d 522 (1975).

Funding under subchapter IV of the Social Security Act was provided to encourage the care of dependent children in their own homes and to strengthen family life. 42 USC 601. Section 607 of the act extended the assistance plan to prevent disintegration of the family unit by forcing a father to leave his home in order that his children would be able to receive assistance. 1967 US Code Cong & Ad News 2834, 2996.

We disagree with plaintiffs' contention that illegitimate children is the proper classification for purposes of equal protection analysis:

"The proper classification for purposes of equal protection analysis is not an exact science, but scouting must begin with the statutory classification itself. Only when it is shown that the legislation has a substantial disparate impact on classes defined in a different fashion may analysis continue on the basis of the impact on

those classes." *Califano v Boles,* 443 US 282, 293-294; 99 S Ct 2767; 61 L Ed 2d 541 (1979).

In *Califano v Boles, supra,* Justice Rehnquist, writing for the majority, concluded that the fact that mother's insurance benefits under 42 USC 402(g)(1) were available only to widows and divorced wives and not to a mother who was never married to the wage earner who fathered her child did not have the impact on illegitimates necessary to warrant further inquiry into discriminatory purposes of the legislation. Justice Rehnquist reasoned that the illegitimate child received insurance benefits whether or not the mother did and that any benefit to the child from the mother receiving mother's insurance benefits was incidental. Thus, the focus of the benefits was found to be on the needs of the surviving spouse or former spouse and not on those of the child.

Plaintiffs attempt to distinguish the instant situation from that in *Boles, supra.* They point out that *Boles* involved subchapter II of the act, which has the purpose of protecting from economic dislocation those dependent on a wage earner for support when that wage earner dies or becomes disabled. According to plaintiffs, the difference in the purposes and eligibility requirements of the assistance programs under subchapters II and IV indicates that the impact on the child from the loss of ADC benefits to the unmarried parent is direct and not incidental.

We fail to see the difference in impact on the illegitimate child under the ADC program as opposed to the mother's insurance program. Under either program, a child will receive benefits for himself regardless of his parents' marital status. That the grant will increase if the child's parents marry is of incidental benefit to the child. The

amount of money provided for the child and his caretaker parent is in theory calculated to be adequate to support the child and the caretaker parent. That the amount of the overall grant to the family unit increases if the father and mother marry will not increase the amount of money available to meet the child's needs since the extra money is ostensibly calculated to meet the enhanced need of the family unit due to the addition of another member. An illegitimate child is still illegitimate if his parents later marry, yet the family unit will receive assistance based on the needs of both parents. Thus, the proper classification for purposes of equal protection analysis is marital status.

Extending aid to include the legal spouse of the unemployed father who is receiving aid for himself and the dependent child is not irrelevant to the legislative purpose of strengthening family life as plaintiffs claim. Congress could reasonably conclude that a family unit which involves marriage between the parents is more enduring than a family unit not based on marriage. See *Willard v Dep't of Social & Health Services,* 91 Wash 2d 759; 592 P2d 1103 (1979). Thus, the provision of benefits to the mother who is married to the caretaker father establishes a criterion which has a rational relation to the legitimate legislative goal of strengthening the family unit in which Congress seeks to let the child remain despite the economic difficulties of that unit. *Weinberger v Salfi, supra,* 772. Compare, *Califano v Boles, supra* (the court noted that a woman who has never been married to the wage earner is far less likely to be dependent upon the wage earner at the time of his death in upholding the requirement that the mother have been married to the wage earner at

one time in order to collect mother's insurance benefits under subchapter II of the Social Security Act).

Plaintiffs lastly object to the marriage requirement, apart from their equal protection argument, on the ground that such a requirement invades the mother's right to privacy under the Ninth Amendment. It is difficult to extract from the potpourri of United States Supreme Court cases cited by plaintiffs in recognition of the "zone of privacy" idea exactly how plaintiff Kegler feels her privacy is being invaded. However, plaintiffs do allege that the challenged statute and regulation constitute a legislative attempt to regulate a highly personal relationship and the decision to marry. They argue that the decision is "no less important and personal than that, treated in *Griswold [v Connecticut,* 381 US 479; 85 S Ct 1678; 14 L Ed 2d 510 (1965)], or *Eisenstadt [v Baird,* 405 US 438; 92 S Ct 1029; 31 L Ed 2d 349 (1972)] * * *".

We do concede that each woman has the right to decide for herself whether to get married just as she has the right to decide, limited by certain recognized state interests, whether to have an abortion, *Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973). However, recognizing such a right does not explain how this right is being invaded by the statute and regulation in question. The state is not forcing plaintiff Kegler to get married; it is merely providing an incentive to get married. We have already decided that equal protection has not been violated by providing additional money to the family unit when that unit consists of a married couple.

We can only surmise that plaintiffs are contending that the government is invading plaintiff Kegler's privacy by requiring her to disclose her

marital status. Since plaintiffs would have to disclose the fact of that status to obtain assistance under the ADC-U program even if they were married, we need not consider whether the state of being an unmarried couple is endowed with a "zone of privacy" when linked to certain fundamental rights such as a decision of whether to procreate. See *Eisenstadt v Baird,* 405 US 438, 453.

Assuming plaintiffs were married to each other, the "zone of privacy" accorded married couples, as recognized in *Griswold, supra,* concerning their right to use contraceptives, is not invaded by the requirement that they disclose the fact of their marriage to increase the size of their grant. Requiring such a disclosure in order to determine eligibility is not an unreasonable invasion of personal privacy. Compare *Wyman v James,* 400 US 309; 91 S Ct 381; 27 L Ed 2d 408 (1971).

Therefore, plaintiffs' generalized notion of a privacy right adds no further dimension to their challenge to the Social Security Act and the pertinent state regulation on equal protection grounds.

Affirmed.