[No. 45933. En Banc. March 29, 1979.]

BOB RALPH WILLARD, *Appellant,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent.*

*Lowell H. Ashbach, Jr.,* for appellant.

*Slade Gorton, Attorney General,* and *Walter E. White, Assistant,* for respondent.

STAFFORD, J.—Bob Ralph Willard appeals an administrative decision ordering that he reimburse the Department of Social and Health Services (Department) for overpayments made in assistance benefits. The Court of Appeals certified the case to this court. We affirm the administrative decision.

In February 1973 appellant applied to the Department for public assistance. On the application form he named himself, his "wife" (Judy Mae Hudson) and their daughter as members of the family assistance unit. Both appellant and "Judy Mae Willard" signed the application. At the time, appellant was disabled and therefore unable to work.

The Department authorized an Aid to Family with Dependent Children (AFDC–R) grant, commencing in February 1973. Thereafter, the assistance unit's grant was changed to AFDC–E because, while appellant continued to be unemployed, he was no longer disabled. Appellant and the family assistance unit received the AFDC–E grant from January 1974 through July 1975. In both 1974 and 1975 appellant filled out "eligibility review" forms on which he again listed himself, his "wife" and their daughter as the family assistance unit.

In June 1975 the Department asked appellant to verify his marital status. This he attempted to do by providing the Department with a shredded marriage certificate issued by the State of Nevada. The name of the person to whom appellant had been married was missing. The Department made inquiry of the State of Nevada and learned the certificate had actually been issued to appellant and Debra Court, his former wife. In July 1975 appellant married Judy Mae Hudson, who previously had signed the applications as Judy Mae Willard.

The Department assessed appellant for an overpayment of assistance benefits paid between February 1973 and July 1975. The assessment was based specifically upon the fact that he had knowingly misled the Department as to his marital status in order to obtain increased public assistance for himself, his "wife", and child. The basic amount of the overpayment was computed as the difference between the assistance actually paid and the amount that should have been paid to a two–person assistance unit.

Appellant requested and received a "fair hearing" on the claimed overpayment. The hearing examiner entered findings of fact and conclusions of law stating appellant had misled the Department and fraudulently received the overpayments. The examiner also upheld the constitutionality of the regulations in question. Appellant sought review by the Superior Court pursuant to RCW 34.04.130. The overpayment charge was upheld. Thereafter he appealed to the

Court of Appeals which in turn certified the matter to this court.

Three issues are presented: (1) was appellant denied equal protection by WAC 388–24–050 which provides that when a child is living with both parents who are *unmarried* only *one* parent can be included in the assistance unit; (2) does the method by which the Department assessed appellant for the overpayment violate the Equal Rights Amendment, Const. art. 31; and (3) did the Department properly adopt a procedural rule to establish which unmarried parent should be excluded from the assistance unit?

■ The AFDC program, 42 U.S.C. § 601 *et seq.,* is one of four categorical assistance programs established by the Social Security Act of 1935 (49 Stat. 620, as amended, 42 U.S.C. § 301–1394). Conditions of eligibility are established by Congress. State participation in the program is voluntary but those states that choose to participate must comply with the terms of the applicable federal legislation, federal rules, and regulations.

> AFDC . . . is a joint federal–state program involving federal funding and state administration. *A state need not participate . . . but if it does, then the state system must be consistent with the federal legislation* creating the program *and the federal rules and regulations* implementing it.

(Italics ours.) *Anderson v. Morris,* 87 Wn.2d 706, 709, 558 P.2d 155 (1976). A participant state has wide discretion to establish its own method of measuring need and setting benefit levels but it does not have such discretion to modify *eligibility* requirements. *King v. Smith,* 392 U.S. 309, 20 L. Ed. 2d 1118, 88 S. Ct. 2128 (1968); *Super Tire Eng'r Co. v. McCorkle,* 412 F. Supp. 192 (D.N.J. 1976), *aff'd,* 550 F.2d 903 (3d Cir. 1977).

The Washington rules and regulations related to AFDC grants are found in WAC 388–24 through 388–33. The regulation at issue here is WAC 388–24–050 which states in pertinent part:

> (3) The AFDC–E assistance unit shall consist of

(a) The eligible child(ren) and

(b) Both natural . . . parents . . . *if legally married to each other,* with whom the child(ren) lives. If not legally married, see subsection (4). . . .

. . .

(4) Unmarried parents living with one or more children

(a) When a child is living with both of his parents *who are unmarried,* only one such parent can be included in the child's assistance unit.

(Italics ours.) This regulation is the state counterpart to 45 CFR 237.50(b)(4) which requires a *ceremonial marriage* between the parents before both may be included in the assistance unit. WAC 388-24-050 properly reflects the federal legislation and regulations.

 Appellant contends the state regulation violates the federal Equal Protection Clause by making a distinction between persons legally married and those not married. Since this distinction involves neither a suspect classification nor a fundamental right,[1] the parties are correct in applying the "rational relationship" test for resolving the constitutional issue. Under the "rational relationship" test legislation must satisfy two requirements: (1) it must apply alike to all members of the designated class and (2) reasonable grounds must exist for distinguishing between those falling within the class and those falling outside of it. *Belancsik v. Overlake Mem. Hosp.,* 80 Wn.2d 111, 492 P.2d 219 (1971). In applying the "rational relationship" test the courts have permitted a wide range of legislative discretion to define classifications and have presumed such legislation to be valid. *Childers v. Childers,* 89 Wn.2d 592, 575 P.2d 201 (1978). This is particularly true where grants of public funds are involved since the finite nature of these resources presents difficult problems of allocation. The United States Supreme Court recognized the need for this deference in

---

[1] The right to marry has been labeled a fundamental one. *Zablocki v. Redhail,* 434 U.S. 374, 54 L. Ed. 2d 618, 98 S. Ct. 673 (1978). However, there is no suggestion that the fundamental nature of the right extends to a right not to marry under the circumstances of this case.

*Dandridge v. Williams,* 397 U.S. 471, 485, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970).

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." . . . "The problems of government are practical ones and may justify, if they do not require, rough accommodations . . . "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

*See also Quern v. Mandley,* 436 U.S. 725, 56 L. Ed. 2d 658, 98 S. Ct. 2068 (1978); *Caughey v. Employment Security Dep't,* 81 Wn.2d 597, 503 P.2d 460, 56 A.L.R.3d 513 (1972).

Since WAC 388–24–050 applies to all unmarried parents of dependent children who are living together it is clear the first requirement of the "rational relationship" test is met. The second requirement is more difficult to meet but is nonetheless satisfied here.

▊▊ To uphold the second requirement it is necessary that a reasonable set of facts be conceived to sustain it. In this regard it is entirely reasonable to assume the legislature (and the Department preparing the regulations) considered the fact of marriage as evidencing a serious commitment to the stability of the family unit, a stability that might be absent in a meretricious relationship. The reasonableness of such a belief was recognized under somewhat different circumstances in *Washington Statewide Org. of Stepparents v. Smith,* 85 Wn.2d 564, 536 P.2d 1202 (1975). Additionally, it is reasonable to assume the legislature as well as the Department was concerned with the potential for abuse if unmarried parents could expand the size of the assistance unit by temporarily cohabiting. It is not necessary that these concerns apply without exception to every conceivable or actual assistance unit since a statu-

tory or administrative rule is not required to filter out only those in the factual position that aroused the concern reflected in the rule. *Mathews v. De Castro,* 429 U.S. 181, 50 L. Ed. 2d 389, 97 S. Ct. 431 (1976).

The two requirements for upholding the validity of a classification scheme under the "rational relationship" test having been satisfied, WAC 388-24-050 is not violative of the Equal Protection Clause.

Next, appellant argues the Department could not, constitutionally, assess him for the overpayment merely because of his status as the father. This, he contends, is liability based on sex and thus violates the Equal Rights Amendment. Const. art. 31. This contention is without merit.

■ The evidence before the Board makes it abundantly clear that it was appellant who made application for the AFDC grants. He was the one who applied as head of the assistance unit. An unchallenged conclusion of law states that he was the payee of the assistance grants. WAC 388-44-110 provides in pertinent part:

> Overpayment—Liability of payee. (1) *Liability for an overpayment shall follow the payee of the grant as an individual.* The overpayment account receivable is established in the name of the payee and all further action (monthly deduction from grant, suspension of grant, claim against estate, etc.) is taken against that individual.

(Italics ours.) The Department did not purport to bill appellant on any basis other than as *payee* of the grant. Thus, the fact that he was billed for the overpayment was not dependent upon his sex. The Equal Rights Amendment is inapplicable.[2]

_____

[2]Appellant does not argue that the liability for the overpayment was joint and thus conceivably covered by WAC 388-44-110(2):

"Joint liability for an overpayment results when all of the following factors are present: overpayment is the result of fraud, collusion is shown between the payee and another party who received a financial benefit as a result of the overpayment. In these instances the overpayment account receivable is established in the name of both parties. Subsequent action is taken against the parties either jointly or individually."

■ Finally, appellant suggests the Department had no procedural rule to establish which of two unmarried parents should be excluded from the assistance unit. He misconceives the impact of the rules that determine the assistance unit, however. The size of the unit is one of the determinants used in setting the appropriate grant level. Excluding one parent results in the unit's total grant level being decreased. Appellant, as a person, is not excluded in a tangible sense any more than his "wife". The assistance unit itself simply qualifies for less funds. This distinction was recognized by the United States Supreme Court in *Dandridge v. Williams, supra.* At issue in *Dandridge* was Maryland's method of awarding AFDC grants under which the standard of need increased with each additional member of the household but the increments became proportionately smaller until the maximum grant level was reached. Parents with large families challenged the Maryland plan contending that the method of computing grant levels totally denied benefits to younger members of a large family. The court rejected this contention.

> Although the appellees argue that the younger and more recently arrived children in such families are totally deprived of aid, a more realistic view is that the lot of the entire family is diminished because of the presence of additional children without any increase in payments. ... . In fact, it is the *family* grant that is affected.

*Dandridge v. Williams, supra* at 477–78.

Had appellant not chosen to deceive the Department when he applied for AFDC grants, the assistance unit would have qualified for a lower level of benefits *no matter which parent applied for the program.*

The decision of the administrative agency is affirmed.

UTTER, C.J., and ROSELLINI, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

Reconsideration denied May 8, 1979.