[No. 8028–8–I.   Division One.   February 9, 1981.]

R. G. VERGEYLE, *Appellant,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Respondent.*

*Gary D. Iwamoto,* for appellant.

*Slade Gorton, Attorney General,* and *John M. Sells, Assistant,* for respondent.

JAMES, C.J.—R. Georgene Vergeyle sought judicial review of a denial of unemployment benefits by the Commissioner of the Employment Security Department (Department). The trial judge affirmed the Department's ruling. We reverse.

In June of 1977, Mrs. Vergeyle submitted a vacation request to her immediate supervisor at Riverton Hospital. She requested 2 weeks of regular annual leave and 2 weeks of leave without pay to run from September 2, 1977 to October 2, 1977. She intended to accompany her husband on a trip to Illinois for the purpose of visiting his mother. Because of her husband's heart condition, the only feasible method of travel was by car. His heart condition also necessitated special travel arrangements, *i.e.,* all lodging accommodations had to be in close proximity to health care facilities. After she submitted her request and before she began to make reservations, she attempted to ascertain whether her leave request would be granted. Each time she approached her supervisor, he told her he was too busy to talk with her.

The hospital hired a person during the summer for the ostensible purpose of filling in for Mrs. Vergeyle on her vacation. Believing that her leave request would be granted, Mrs. Vergeyle began making reservations about the second week of August. Approximately 1 week before September 2, she checked with the payroll clerk regarding her vacation

pay. The payroll clerk informed Mrs. Vergeyle that her supervisor had not yet authorized her vacation request. She finally talked with her supervisor and for the first time was told there might be a problem but she was not specifically informed that her request was denied.

On August 31, 2 days before the September 2 scheduled departure date, her supervisor formally notified her that her request was denied. He presented a written alternative to her, authorizing her leave to begin 1 week later. Because she had already made extensive commitments, she refused the alternative proposal. She signed the following statement:

> Alternative not acceptable. I will not report for work beginning 9–2–77 thru 10–2–77. I understand termination of employment will result.

Exhibit 12. Although she was scheduled to work the next day, she failed to report for work, left on her vacation September 2, and did not return to the hospital until October 3, 1977. The Department determined that she had voluntarily terminated employment without good cause and denied her benefits pursuant to RCW 50.20.050(1).

At the outset, we must determine the appropriate standard of review. The Department argues that its decision should be reviewed under the clearly erroneous or arbitrary and capricious standards of RCW 34.04.130(6)(e), (f). We do not agree. Our Supreme Court, in reviewing a similar case involving a mixed question of law and fact, utilized the error of law standard of RCW 34.04.130(6)(d). The court stated that a mixed question of law and fact exists in cases

> where there is dispute both as to the propriety of the inferences drawn by the agency from the raw facts and as to the meaning of the statutory term . . .'"

*Daily Herald Co. v. Department of Employment Security*, 91 Wn.2d 559, 561, 588 P.2d 1157 (1979). In this case, there is a dispute both as to the inferences drawn by the Department and the meaning of the statutory term, "left work voluntarily without good cause . . ." RCW 50.20.050(1).

We, therefore, will exercise our "inherent and statutory authority to make a de novo review independent of the [Department's] decision." *Weyerhaeuser Co. v. Department of Revenue,* 16 Wn. App. 112, 115, 553 P.2d 1349 (1976).

Mrs. Vergeyle's primary contention is that she was discharged and did not leave work voluntarily. No Washington case brought to our attention has interpreted the term "voluntarily" as used in RCW 50.20.050(1). Other jurisdictions, however, have considered the issue. We believe the better–reasoned rule is that denial of benefits for a "voluntary" termination of employment requires a showing that an employee *intentionally* terminated his employment.

> As we see it, the phrase "due to leaving work voluntarily" has a plain, definite and sensible meaning, free of ambiguity; it expresses a clear legislative intent that to disqualify a claimant from benefits the evidence must establish that the claimant, by his or her own choice, intentionally, of his or her own free will, terminated the employment. If an employee is discharged for any reason, *other than perhaps for the commission of an act which the employee knowingly intended to result in his discharge,* it cannot be said that his or her unemployment was due to "leaving work voluntarily."

(Italics ours.) *Allen v. CORE Target City Youth Program,* 275 Md. 69, 79, 338 A.2d 237 (1975). In this case, Mrs. Vergeyle's conduct falls within the italicized portion of the rule as stated by the Maryland court. Her written acknowledgment, "I understand termination of employment will result", establishes she knew her unauthorized absence would result in her discharge. Although we agree with the Department that Mrs. Vergeyle voluntarily terminated her employment, we must still determine whether she had "good cause."

Washington case law has long recognized that good cause for leaving employment is not limited to work–connected factors. As our Supreme Court said in an early case:

For the reasons heretofore stated, the trial court erred in concluding that the words "good cause," as used in RCW 50.20.050, *supra*, mean a cause "attributable to or connected with the claimant's employment"; and we hold "good cause" for termination of employment, under the statute, may include compelling personal reasons.

*In re Bale*, 63 Wn.2d 83, 90, 385 P.2d 545 (1963). *See also Matison v. Hutt*, 85 Wn.2d 836, 539 P.2d 852 (1975). This court recently held that the judicial definition of good cause was not abrogated by the recent amendments to the statute. *Coleman v. Department of Employment Security*, 25 Wn. App. 405, 607 P.2d 1231 (1980). Although no cases discuss whether an employee's response to unreasonable actions by the employer will constitute a compelling personal reason, the Department has in the past concluded such action does constitute good cause. *See In re Wedvik*, Comm'r Dec. 1107 (1974).

*Wedvik* is factually indistinguishable. There, the petitioner applied for a 2–week vacation pursuant to normal procedures of his employer. Believing his vacation request would be granted, he made plans for a trip to Mexico. Four days prior to his scheduled departure date, however, his employer informed him that his leave request would be denied. The Department concluded Wedvik voluntarily terminated employment, but that he had good cause, stating:

> In determining whether an individual has good cause for leaving employment, we require him to meet the test of what an ordinarily prudent person would have done under similar circumstances. We do not see why an employer should not be required to meet the same test. In other words, the actions of the employer should be those which would be considered prudent and reasonable. We are unable to find that the employer has met such a test. Under the circumstances of the case, we would expect the employer reasonably to have notified the petitioner as soon as possible that his leave would not or could not be granted. This was not done, and petitioner became aware of this at a time where [*sic*] he could not reasonably change his plans and remain on the job. We

conclude that the petitioner acted reasonably and that the employer did not. Therefore, we consider that the petitioner has established good cause within RCW 50.20-.050.

*In re Wedvik,* at 6.

■ In *Wedvik,* as in this case, the employer officially notified the claimant that the vacation request would be denied a few days prior to the scheduled departure date. The Department's decision here, however, ignores the unreasonable conduct of the employer and focuses instead only on the employee's acts. Although stare decisis plays only a limited role in the administrative agency context, agencies should strive for equality of treatment. As one federal court has stated:

> [There is a] "basic human claim that the law should provide like treatment under like circumstances." *Friendly, Federal Administrative Agencies,* 19 (1962). Although agencies are not inflexibly bound by the rule of *stare decisis,* . . . neither is their discretion unlimited. Thus, courts have imposed a "duty of consistency toward similarly situated taxpayers", . . . and have held that agencies may not "treat similar situations in dissimilar ways," . . . *See Davis, Administrative Law Treatise,* § 1707–4 pp. 413–16 and cases cited (Supp. 1976).
>
> A fundamental of justice is equality of treatment. We need not debate whether this is a product of natural law or simply a pragmatic gloss on the meaning of democratic institutions. We know that in a unitary court system it is not *stare decisis* alone that binds the structure, but also a recognition that like treatment is the touchstone.

(Citations omitted.) *Jones v. Califano,* 576 F.2d 12, 20 (2d Cir. 1978). The Department has presented no reasons for its departure from *Wedvik's* reasoning. We, therefore, reverse its conclusion that Mrs. Vergeyle did not have good cause.

Because Mrs. Vergeyle has successfully appealed, she is entitled to attorney's fees for services performed in connection with the appeal process to be paid from the unemployment compensation administration fund. RCW 50.32.160. *Ancheta v. Daly,* 77 Wn.2d 255, 461 P.2d 531

(1969). The statute requires this court to fix the fees at this level of review, and we hereby fix fees of $500. We further remand this case to the Superior Court for a determination of reasonable attorney's fees "at both the administrative level and in the superior court" in accordance with *Ancheta v. Daly, supra* at 266.

CALLOW and RINGOLD, JJ., concur.

Reconsideration denied March 10, 1981.

Review denied by Supreme Court May 22, 1981.