[No. 52475-1.   En Banc.   December 18, 1986.]

BETTE J. CONKLIN, ET AL, *Respondents*, v. A. N. SHINPOCH, *as Secretary of the Department of Social and Health Services, Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Charles F. Murphy, Assistant,* for appellant.

*Janet Varon* and *Robin Zukoski* of *Evergreen Legal Services,* for respondents.

DURHAM, J.—The Department of Social and Health Services (DSHS) appeals from a trial court decision declaring that its interpretation of RCW 74.04.005 to deny benefits under the State's General Assistance—Unemployable program to a certain category of persons is unconstitutional. We reverse, holding that DSHS correctly construed the statute and that its interpretation does not violate the equal protection clause of the fourteenth amendment to the United States Constitution and the privileges and immunities clause of the state constitution, article 1, section 12.

The following background information on relevant public assistance programs is provided to establish a context for understanding the facts in this case.

Supplemental Security Income (SSI) is a federal program providing monthly payments to aged, blind or disabled persons who are determined eligible on the basis of income and resources. 42 U.S.C. §§ 1381, 1381a, 1382 (1982 & Supp. 2, 1984). The SSI program took effect on January 1, 1974. It replaced a previous arrangement under which each

state had administered its own program and had determined the level of need and benefits due to applicants. The SSI program was enacted, in part, to remedy variations in states' eligibility requirements. It established a federal benefit payment level intended to provide a nationally uniform minimum benefit.

In addition, the states were authorized to supplement the federal payments. 42 U.S.C. § 1382. States that chose to offer these supplementary payments were allowed either to administer distribution of the payments separately or to enter into agreements with the federal government under which the Secretary of Health and Human Services would administer distribution of the supplementary payments on their behalf. 42 U.S.C. § 1382e(a), (b). Under the latter scheme, the federal government bears the entire cost of administering the distribution of federal and state payments, and the states reimburse it for the amounts distributed as supplementary payments to individuals. 42 U.S.C. § 1382e(d). See *Bouchard v. Secretary of Health & Human Servs.*, 583 F. Supp. 944, 947–48 (D. Mass. 1984) for further description of this program.

Our State chose to offer the supplementary payments and entered into an agreement with the federal government under which it would perform the administrative functions on the State's behalf. RCW 74.04.600–.630. Pursuant to federal regulations, the State designated several categories according to which the level of supplementary payments would vary. WAC 388–59–040. *See also* 20 C.F.R. § 416.2030(a)(2) (1986). One of these categories is a couple consisting of a person eligible for SSI and an "ineligible spouse". An "ineligible spouse" is one who is either not aged, blind or disabled, or although aged, blind or disabled has not applied for SSI. WAC 388–59–010(13).

A couple consisting of an SSI beneficiary and an SSI–ineligible spouse receives a federally funded benefit plus a state–funded supplement. *See* WAC 388–29–295. Medical coverage is not available to SSI–ineligible spouses through this program. SSI–ineligible spouses are only eligible for

medical assistance for "acute and emergent" medical conditions, under the State's limited casualty program of medical care for the medically indigent, designed to meet health care needs of persons not receiving cash assistance or eligible for any other medical program. WAC 388–100.

The General Assistance—Unemployable (GA–U) program is a separate, state–funded public assistance program. RCW 74.04.005(6). Under this program, aid is provided to persons "in need" who come within certain categories. The category relevant to the present case includes those who are not eligible to receive "federal aid assistance" other than food stamps and medical assistance, and are incapacitated from gainful employment by reason of bodily or mental infirmity that will likely continue for a minimum of 60 days. RCW 74.04.005(6)(a)(i), (ii)(B). The Legislature has further stated: "General assistance shall be provided only to persons who are not members of assistance units receiving federal aid assistance", with certain exceptions, and who "will accept available services which can reasonably be expected to enable the person to work or reduce the need for assistance unless there is good cause to refuse." RCW 74.04.005(6)(c). State–funded medical care services are also available to recipients of general assistance in accordance with certain medical eligibility requirements. RCW 74.09-.035.

The present action arose out of a DSHS decision terminating the named respondent, Bette J. Conklin, from further receipt of benefits under the GA–U program. Mrs. Conklin had been receiving GA–U benefits since December 1983. On January 4, 1985, DSHS notified her that it was terminating these benefits because she was "receiving SSI supplemental payments as an ineligible spouse." At the time, Mrs. Conklin's husband, an SSI beneficiary, received a monthly check for $515.40 which included an SSI benefit and a state–funded supplemental payment of $162.10 due to Mrs. Conklin's status as an SSI–ineligible spouse. Essentially, DSHS terminated Mrs. Conklin's GA–U benefits after discovery that her prior receipt of such benefits had

not conformed with its established policy. According to DSHS, SSI-ineligible spouses of SSI beneficiaries receive federal aid assistance, in effect, through the supplement to SSI, and are members of assistance units receiving federal aid assistance. Therefore, they are excluded from GA-U benefits pursuant to RCW 74.04.005(6).

A hearing on the termination of Mrs. Conklin's GA-U benefits was held before an administrative law judge. The judge rendered an initial decision that her GA-U benefits should not have been terminated. A review judge granted DSHS's petition for review and reversed the initial decision, thus finding Mrs. Conklin ineligible for GA-U benefits.

Mrs. Conklin filed a petition for judicial review and a complaint for declaratory, injunctive and retroactive relief in Thurston County Superior Court. She claimed, among other things, that the interpretation of RCW 74.04.005 to deny GA-U benefits to all SSI-ineligible spouses of SSI recipients violated the equal protection clause of the fourteenth amendment to the United States Constitution and the privileges and immunities clause of the state constitution, article 1, section 12. The parties stipulated to entry of an order certifying the case as a class action. The court ordered that the suit be maintained as a class action

> on behalf of all persons who, on or after July 14, 1985, apply for or receive GAU benefits, or have pending administrative or judicial appeals of denials or terminations, who are or will be married to SSI recipients receiving ineligible spouse payments from the State of Washington.

Mrs. Conklin was authorized to proceed as representative of the class.[1]

The trial court concluded that DSHS's interpretation of

---

[1]Mrs. Conklin was determined eligible for SSI in her own right effective on or about October 1, 1985, and began receiving Medicaid coverage as a part of SSI. The issue in this case, however, remains alive because other members of the certified class are still affected by the policy in question. In addition, Mrs. Conklin seeks retroactive relief for the period before her eligibility for SSI.

RCW 74.04.005 violated the equal protection clause of the United States Constitution and the privileges and immunities clause of the state constitution. It adopted a different construction of the statute which would prohibit DSHS from denying or terminating GA–U benefits on the grounds of SSI–ineligible spouse status. Under this interpretation, SSI–ineligible spouses of SSI recipients would not be considered part of the "assistance unit" of their spouses and, thus, would not be members of assistance units receiving federal aid assistance. The trial court enjoined DSHS from further denying or terminating GA–U benefits on the basis of SSI–ineligible spouse status, ordered it to redetermine class members' eligibility for GA–U benefits and award such benefits to eligible individuals retroactively, and directed it to revise and publish regulations, instructions and notices to implement the order.

DSHS appealed to the Court of Appeals and this court accepted certification of the case. Enforcement of the trial court's order was stayed.

This case involves two main issues. First, does RCW 74.04.005 preclude SSI–ineligible spouses from receiving GA–U benefits? Second, if RCW 74.04.005 is construed to exclude SSI–ineligible spouses from GA–U benefits, does this violate the equal protection clause of the fourteenth amendment to the United States Constitution and the privileges and immunities clause of Const. art. 1, § 12?

The first issue is a matter of statutory construction. RCW 74.04.005(6)(c) provides: "General assistance shall be provided only to persons who are not members of assistance units receiving federal aid assistance . . ." RCW 74.04-.005(5) defines "federal aid assistance" as follows:

> The specific categories of assistance for which provision is made in any federal law existing or hereafter passed by which payments are made from the federal government to the state in aid or in respect to payment by the state for public assistance rendered to any category of needy persons for which provision for federal funds or aid may from time to time be made, or a federally administered needs–based program.

According to WAC 388–29–001, "'Assistance unit' means a person or members of a family eligible to be included in a single categorical grant." Further, WAC 388–29–020(1) states:

The law specifies who is eligible to receive assistance in his or her own right. The law does not always specify, except in general terms, which other persons may be included in the grant made to the primary person. The department, therefore, defines those who in addition to the primary person may have their requirements computed with the requirements of the primary applicant. Such family groupings are called "assistance units." The persons whose needs are included in the need of the primary applicant are those for whose support the applicant is legally responsible.

■ Clearly, SSI–ineligible spouses are members of assistance units receiving federal aid assistance. Together, a person eligible for SSI and his or her SSI–ineligible spouse comprise an assistance unit receiving SSI. The person eligible for SSI is qualified to receive assistance in his own right. The SSI–ineligible spouse is part of the family grouping which is contemplated as an assistance unit in WAC 388–29–020(1). By receiving SSI, such assistance units receive "federal aid assistance". SSI fits within the definition of "federal aid assistance" in RCW 74.04.005(5) because it is a federally administered needs–based program. Hence, SSI–ineligible spouses are members of assistance units receiving federal aid assistance, and are excluded from GA–U benefits pursuant to RCW 74.04.005(6).

Having determined that RCW 74.04.005 precludes SSI–ineligible spouses from receiving GA–U benefits, we must next consider if this constitutes a denial of equal protection of the laws.

■■ The parties do not dispute the basic principles of constitutional analysis that apply to this case.[2] DSHS's

---

[2] Our interpretations of the privileges and immunities clause of the state constitution have followed the interpretation of the equal protection clause of the federal Fourteenth Amendment. *Seattle v. State,* 103 Wn.2d 663, 672, 694 P.2d 641 (1985).

policy does not involve a suspect classification, nor does it affect a fundamental right. Therefore, the rational basis test for equal protection analysis applies. *Myrick v. Board of Pierce Cy. Comm'rs,* 102 Wn.2d 698, 701, 677 P.2d 140, 687 P.2d 1152 (1984). Under this test, the challenged classification is given minimal scrutiny. *Myrick,* at 701. *See also Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs,* 92 Wn.2d 831, 834, 601 P.2d 936 (1979), *appeal dismissed,* 446 U.S. 979 (1980). When a classification is subject to minimal scrutiny, the party challenging it has the heavy burden of overcoming the presumption of its constitutionality. *Yakima Cy. Deputy Sheriff's Ass'n,* at 835; *see also Yakima Cy. Deputy Sheriff's Ass'n,* at 844 (Utter, J., concurring) (in equal protection cases, a particularly heavy presumption of constitutionality applies when the statute concerns economic matters).

The Legislature has broad discretion in establishing classifications in social and economic legislation. Such a classification "will be upheld if any state of facts may reasonably be conceived to substantiate it." *Automobile Drivers & Demonstrators, Local 882 v. Department of Retirement Sys.,* 92 Wn.2d 415, 422, 598 P.2d 379 (1979), *appeal dismissed, cert. denied,* 444 U.S. 1040 (1980). *See also Dandridge v. Williams,* 397 U.S. 471, 484–85, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970).

In *Dandridge,* recipients of Aid to Families With Dependent Children (AFDC) challenged the constitutionality of a state regulation that placed a ceiling on the total amount of AFDC money a family unit could receive, regardless of the family's size and actual need. The United States Supreme Court held the regulation was constitutional. It reasoned:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality."

*Dandridge,* at 485 (quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 55 L. Ed. 369, 31 S. Ct. 337 (1911)). The Court found a rational basis for the regulation in that it served the state's legitimate interests in encouraging employment and avoiding discrimination between welfare families and families of the working poor. *Dandridge,* at 486. It observed that it had not decided that the regulation was wise or best served the state's ideal objectives.

> But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. . . . the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients.

*Dandridge,* at 487.

To apply the rational basis test for deciding if there is a denial of equal protection, our court uses a 3–step inquiry. First, does the classification apply alike to all members within the designated class? Second, does some basis in reality exist for reasonably distinguishing between those within and without the designated class? Third, does the challenged classification have any rational relation to the purposes of the challenged statute? *Myrick,* at 701; *Yakima Cy. Deputy Sheriff's Ass'n,* at 835–36.

In order to pursue this inquiry in the present case, we must first identify the classification in question. The challenged classification which we must review is the inclusion of SSI–ineligible spouses in the category of recipients of federal aid assistance, which operates to bar them from GA–U benefits.

The challenged classification satisfies the first step of the rational basis inquiry. DSHS consistently treats all SSI–ineligible spouses as recipients of federal aid assistance who are precluded from receiving GA–U benefits. Therefore, the classification applies alike to all members within the designated class.

With respect to the second step of the inquiry, respondents contend that there is no reason to distinguish between incapacitated SSI–ineligible spouses and others who apply for and, if otherwise eligible, receive GA–U benefits.[3] DSHS, however, offers four reasons for excluding SSI–ineligible spouses from GA–U benefits.

■ First, DSHS points out that this policy conserves finite state resources. According to our review of prior equal protection cases, while classifications involving finite state resources may be treated deferentially, they have not been upheld solely because of the finitude of funds. Rather, some other reason has been identified as a rational basis for the classification.

In *Automobile Drivers & Demonstrators, Local 882 v. Department of Retirement Sys.,* 92 Wn.2d 415, 598 P.2d 379 (1979), *appeal dismissed, cert. denied,* 444 U.S. 1040 (1980), this court considered if there were reasonable grounds for excluding port police officers from a category

---

[3]Respondents assert that the only difference between incapacitated SSI–ineligible spouses and those who qualify for GA–U is the source of their income and that it is irrational to deny benefits based solely on income source. They refer to a recent case, *Ranschburg v. Toan,* 709 F.2d 1207 (8th Cir. 1983) which, they contend, held that income source is an impermissible basis for distinguishing among the needy disabled.

*Ranschburg* involved a Missouri statute which provided "Utilicare" assistance in paying heating bills to persons with a certain level of income who were considered "disabled". The statute defined "disabled" to include only persons who received benefits under one of several specific public assistance programs. The plaintiff, who was denied Utilicare, did not receive benefits under one of these enumerated programs, but did receive medical assistance benefits under another program under which she had been determined disabled according to standards which were as restrictive. *Ranschburg,* at 1208–09. The court held the denial of Utilicare to disabled beneficiaries of the latter program was unconstitutional.

It is true that, in *Ranschburg,* the State had effectively distinguished between classes of individuals based on which program was the source of their income. However, contrary to respondents' assertion, the court did not strike down the classification specifically because it was based on income source; rather, it found that none of the State's asserted reasons for the classification was rationally based. *Ranschburg,* at 1209–12. Similarly, in the present case, this court must decide if any of the reasons presented by DSHS provide a rational basis for distinguishing between SSI–ineligible spouses and persons whom DSHS deems eligible for GA–U benefits.

eligible for membership in the Washington law enforcement officers' and fire fighters' (LEOFF) retirement system. We stated: "One such ground may be the solvency and integrity of the LEOFF fund. When the state administers a finite fund, a statutory discrimination will not be set aside if any state of facts can reasonably be conceived to justify it." *Automobile Drivers,* at 423. We did not, however, rely solely on the fact that the fund was finite in upholding the classification. Rather, we proceeded to find several other rational grounds for excluding port police from LEOFF. *See Automobile Drivers,* at 424. In *Caughey v. Employment Sec. Dep't,* 81 Wn.2d 597, 503 P.2d 460, 56 A.L.R.3d 513 (1972), this court upheld a classification making certain persons ineligible for unemployment benefits. Although we noted the finitude of the state unemployment compensation fund, we also identified another reasonable basis for the classification. *Caughey,* at 599, 600–02. Thus, we did not in fact rely on the finite fund rationale alone.

Similarly, the United States Supreme Court has considered the finite character of funds in upholding economic classifications, but has also identified more specific rational bases justifying such classifications. In *Bowen v. Owens,* ___ U.S. ___, 90 L. Ed. 2d 316, 106 S. Ct. 1881 (1986), the Court upheld the constitutionality of a classification under the Social Security Act authorizing payments of survivor's benefits to a wage earner's widowed spouse who remarried after age 60 but not to a similarly situated divorced widowed spouse. The Court stated that the benefit program "requires Congress to make many distinctions among classes of beneficiaries while making allocations from a finite fund. In that context, our review is deferential." *Bowen,* 106 S. Ct. at 1885. It concluded that the classification was rationally based on a reasonable assumption that divorced widowed spouses are generally less dependent on the wage earner's resources than are widows. *Bowen,* 106 S. Ct. at 1886. *See also Dandridge v. Williams,* 397 U.S. 471, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970).

We conclude that while an economic classification in-

volving finite state funds must be treated with deference, the finitude of the fund is not, in itself, a sufficient reason for upholding the classification. This analysis is not only consistent with the case law, but it is the most sensible approach. If the finitude of a fund were the sole reason for upholding a classification excluding persons from the fund, any such classification involving a state fund would be valid, since all funds are finite. *See Automobile Drivers,* at 427 (Dolliver, J., dissenting). Thus, although we must treat the challenged classification in this case deferentially, it cannot be justified solely on the ground that state public assistance funds are finite. Some other legitimate reason for the classification must exist.

The second reason DSHS presents for the challenged classification is that SSI–ineligible spouses' financial needs are addressed in part by the state supplement to SSI, and that their medical needs are addressed by the acute and emergent care provisions of the limited casualty program for the medically indigent. Respondents argue, however, that their financial and medical needs are not being met by any standard, including the standard applicable to GA–U applicants. Further, they emphasize that SSI–ineligible spouses do not receive general medical assistance.

The extent to which SSI–ineligible spouses' needs are actually being met is not a factor which militates strongly either for or against the challenged classification. The fact that SSI–ineligible spouses receive some state aid indicates that the State is not completely ignoring their needs. However, this alone is not a sufficient reason for distinguishing between SSI–ineligible spouses and those who are eligible for GA–U benefits. On the other hand, the possibility that class members' needs are not fully met does not render the classification unconstitutional. Other unmet needs exist within assistance programs. This state's current level of payment under the GA–U program is 36.8 percent less than the established standard of need level. Thus, the GA–U program itself does not completely supply the needs of its recipients.

The third reason DSHS offers for excluding SSI–ineligible spouses from GA–U benefits is that it avoids duplication of benefits since the SSI–ineligible spouse already receives a state–funded supplement. DSHS points out that if GA–U benefits were provided to SSI–ineligible spouses, a couple consisting of a person eligible for SSI and an SSI–ineligible spouse would receive more total assistance per month than either a couple eligible only for GA–U benefits or a couple consisting of two spouses eligible for SSI. We agree with DSHS that the exclusion of SSI–ineligible spouses from GA–U benefits is a rational means of preventing this anomalous result. It is reasonable to distinguish between SSI–ineligible spouses and others in order to avoid such a duplication of benefits.

Finally, DSHS contends that excluding SSI–ineligible spouses from GA–U benefits relieves administrative burden. It asserts that, by automatically extending a state supplement to SSI–ineligible spouses in lieu of GA–U benefits, it provides aid to such persons without having to process them to decide if they are incapacitated under the criteria for the GA–U program. Respondents argue, however, that any additional administrative burden in allowing SSI–ineligible spouses to apply for GA–U would be minimal. They note that no new administrative system is required. Rather, SSI–ineligible spouses' applications would be processed along with applications of all other GA–U applicants and in the same manner.

A number of cases suggest that administrative convenience alone is not a sound basis for upholding a challenged classification. *See, e.g., Medora v. Colautti,* 602 F.2d 1149, 1153 n.9 (3d Cir. 1979) ("Certainly, administrative convenience, alone, cannot justify denying benefits to a class of applicants who are otherwise qualified to receive them."); *Morales v. Minter,* 393 F. Supp. 88, 98 (D. Mass. 1975) (statute denying relief to persons 65 or older pending their receipt of initial SSI payments cannot be justified by state's interest in administrative speed and efficiency). We believe that while administrative convenience is a factor that may

be considered, it should not be the sole reason for upholding a challenged classification. In the present case, the denial of GA–U benefits to SSI–ineligible spouses may provide some administrative relief to the state, although the extent of such relief is minimal. Thus, this factor weighs slightly in favor of the classification.

To summarize our analysis under the second step of the rational basis test, we find that neither the finite character of state funds, the availability of other resources, nor administrative burden, standing alone, would provide a sufficient basis to distinguish between those within and without the designated class. However, when these factors are considered together, along with the undeniably valid objective of avoiding duplication of benefits, it becomes clear that there are reasonable grounds for distinguishing between SSI–ineligible spouses and those who are eligible to receive GA–U benefits.

The third step in the rational basis inquiry is if the challenged classification is rationally related to the purpose of the statute. We conclude that it is. The GA–U program is part of a larger scheme of public assistance programs. RCW 74.98.040 provides that the purpose of the public assistance statutes is

> to provide for the public welfare by making available, in conjunction with federal matching funds, such public assistance as is necessary to insure to recipients thereof a reasonable subsistence compatible with decency and health.

SSI–ineligible spouses' financial needs are already addressed by the state supplement to SSI. Their essential health care needs are addressed by the State's limited casualty program of medical care for the medically indigent. Ideally, SSI–ineligible spouses might receive even more benefits. However, limitations are necessary in any public assistance program and are legitimate as long as they are generally consistent with the purpose of the statute. SSI–ineligible spouses already receive assistance necessary to ensure them a reasonable subsistence. It is, therefore,

consistent with the purpose of the public assistance statutes to preclude them from additional benefits.

■ In summary, the challenged classification satisfies all three steps of the rational basis inquiry. First, the classification applies alike to all SSI–ineligible spouses. Second, there are reasonable grounds for distinguishing between SSI–ineligible spouses and those who are eligible to receive GA–U benefits. If SSI–ineligible spouses received GA–U benefits, they and their spouses would receive more total aid than couples with two GA–U eligible spouses or two SSI–eligible spouses. The challenged classification is a reasonable method of allocating limited state funds to prevent this irrational result. Finally, the classification is rationally related to the purpose of the statute. We conclude that this classification has a reasonable basis and, therefore, is not unconstitutional.

We hold that RCW 74.04.005 excludes SSI–ineligible spouses from GA–U benefits. Furthermore, this exclusion is not a violation of the equal protection clause of the fourteenth amendment to the United States Constitution or the privileges and immunities clause of Const. art. 1, § 12. The trial court is reversed.

DOLLIVER, C.J., and BRACHTENBACH, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.

DORE, J. (dissenting)—The majority holds that the Department of Social and Health Services (DSHS) can deny the State's GAU financial help[4] to disabled persons, who but for their marital status to SSI[5] recipients would receive such aid. The majority tries to justify this inequity by saying that ineligible spouses already get benefits through federal SSI to their aged, blind or disabled

---

[4]"General assistance—unemployable" state funded public assistance program. RCW 74.04.005(6).

[5]Federal Supplemental Security Income, 42 U.S.C. §§ 1381, 1381a, 1382 (1982 & Supp. 2, 1984).

spouses. I disagree with this view because it erroneously contemplates that the State's optional supplement[6] is "federal–aid assistance."[7] It also contravenes congressional and legislative intent by cutting off qualified persons from legitimate benefits.

The majority's characterization of our State's supplement to SSI unfairly denies all but very limited "acute and emergent"[8] medical coverage to an SSI–ineligible spouse. This interpretation ignores the intent of the Washington Legislature. By enacting the GAU program, our Legislature saw a need and made provision to help that class of persons represented here: persons unable to work due to mental or physical disability who do not receive federal–aid assistance.

All GAU recipients qualify for medical care services under RCW 74.09.035, but SSI–ineligible spouses do not qualify. There is no question that persons in this class *would* get GAU medical aid if not married to an SSI recipient. By adopting the DSHS interpretation, the majority unjustly differentiates between persons whose spouses receive SSI and those whose spouses receive income for some other reason.

In 1974 Congress found it necessary to enact the SSI program and set minimum assistance levels to the poor and disabled because previous state programs were inadequate. By setting a minimum standard, Congress was not thereby encouraging the states to abandon their own legislative mandates. In addition to providing SSI assistance, the federal government also bears administrative costs for both the SSI and the state supplement program. By the majority's logic we are led to believe that, after benefiting by federal administration of the State's own funds, the State may then term such funds "federal–aid assistance" and deny

---

[6]RCW 74.04.620.

[7]RCW 74.04.005(5).

[8]WAC 388–100.

needy citizens the very benefits ordered by the Legislature and available to other similarly situated recipients.

The most callous aspect of the majority's interpretation is that it ignores an entire category of persons who have fallen through a crack between two systems. DSHS agrees that disablement from work due to mental or physical infirmity would qualify these persons for GAU under one of two requirements. It should be apparent that the other requirement is also met because such persons do not qualify for federal–aid assistance. To say that state payments constitute federal–aid assistance because the federal government takes the State's administrative burden to itself, strains credulity.

The basic goal of all statutory construction is to carry out the intent of the Legislature. *Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 1, 5, 665 P.2d 891 (1983). Where disagreement regarding such intent arises, this court must construe the statute's language to effectuate the purpose of the act as a whole. *Condit v. Lewis Refrigeration Co.*, 101 Wn.2d 106, 110, 676 P.2d 466 (1984). The purpose and intent of RCW Title 74, "Public Assistance," is to provide "such public assistance as is necessary to insure . . . *a reasonable subsistence compatible with decency and health.*" (Italics mine.) RCW 74.98.040.

Because a construction of RCW 74.04.005 to withhold GAU benefits from SSI–ineligible spouses unreasonably discriminates between persons similarly situated, it is an infringement of federal equal protection and Washington's privileges and immunities clause. *State v. Hall*, 104 Wn.2d 486, 493, 706 P.2d 1074 (1985); *Myrick v. Board of Pierce Cy. Comm'rs*, 102 Wn.2d 698, 701, 677 P.2d 140, 687 P.2d 1152 (1984); *Cleburne v. Cleburne Living Ctr.*, ___ U.S. ___, 87 L. Ed. 2d 313, 105 S. Ct. 3249, 3258 (1985); *United States Dep't of Agriculture v. Moreno*, 413 U.S. 528, 533, 538, 37 L. Ed. 2d 782, 93 S. Ct. 2821 (1973); *Ranschburg v. Toan*, 709 F.2d 1207, 1211–12 (8th Cir. 1983). By refusing to identify state funds as federal–aid assistance, the trial court honored the purpose and intent of RCW Title 74 and

correctly sustained the entitlement of this class to benefits our Legislature found necessary for maintaining decency and health among our citizens.

CONCLUSION

I dissent from the majority. I would affirm the trial court because (a) RCW 74.04.005 does *not* exclude SSI–ineligible spouses from GAU benefits, and (b) the DSHS exclusion violates both federal equal protection under U.S. Const. amend. 14, § 1 and our State's privileges and immunities clause in Const. art. 1, § 12.

UTTER and PEARSON, JJ., concur with DORE, J.

Reconsideration denied March 16, 1987.