[No. 53263–0. En Banc. June 4, 1987.]

KAREN A. DAVIS, *Appellant*, v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Respondent*.

*John F. Hayden,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Thomas L. Anderson, Assistant,* for respondent.

DORE, J.—We hold that a person who voluntarily quits employment to live in a meretricious relationship is not entitled to unemployment compensation under the Employment Security Act, RCW Title 50. We affirm.

## FACTS

Karen Davis quit her job with the Equifax Corporation in Tacoma, where she had been employed for 13 years, in

order to move from Tacoma to Port Angeles and live with Andrew Stephens. Davis and Stephens had been seeing each other every weekend for 6 years, and Davis considers the relationship to be the same as a marriage. Stephens is the executor of Davis' estate, the beneficiary of her insurance, and is to act on behalf of her children if she dies. Davis believes she will eventually marry Stephens, but has no immediate plans to marry him for personal and financial reasons. The financial reason appears to be that if they were married her income might be subject to child support obligations for Stephens' children by his ex–wife.

Prior to quitting her job, Davis requested to be transferred to the Port Angeles branch of Equifax, but such request was denied because it is a 1–person office that had no vacancy. She was denied a request for a leave of absence because of company policy against such leaves. Stephens attempted, without success, to seek employment in Tacoma or its environs.

Davis applied to the Department of Employment Security for unemployment benefits, but was denied benefits because it found she lacked good cause for quitting. Her appeals to the Office of Administrative Hearings, the Commissioner of the Department of Employment Security and Clallam County Superior Court were unsuccessful. Davis appealed the adverse rulings to the Court of Appeals, which certified the appeal here.

### STANDARD OF REVIEW

The essential facts of this case are undisputed. Davis argues that the denial of unemployment compensation under the facts of this case was affected by an error of law. Judicial review of state administrative agency decisions is governed by RCW 34.04.130, which provides in relevant part:

(6) The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

. . .

(d) affected by . . . error of law . . .

In reviewing an administrative agency decision under RCW 34.04.130(6)(d), this court should "essentially substitute its judgment for that of the administrative body, though substantial weight is accorded the agency's view of the law." *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983).

## GOOD CAUSE EXCEPTION

The Employment Security Act, RCW Title 50, sets aside unemployment reserves to be used for the benefit of persons unemployed through no fault of their own. RCW 50.01.010. RCW 50.20.050 is one of the sections that ensures that only involuntarily unemployed persons benefit under the act. RCW 50.20.050(1) provides that an individual who leaves work voluntarily shall be disqualified from receiving benefits unless he or she has good cause to quit. RCW 50.20.050(3) limits the application of the good cause exception as follows:

> In determining under this section whether an individual has left work voluntarily without good cause, the commissioner shall only consider work–connected factors such as the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness for the work, the individual's ability to perform the work, and such other work connected factors as the commissioner may deem pertinent, including state and national emergencies. Good cause shall not be established for voluntarily leaving work because of its distance from an individual's residence where the distance was known to the individual at the time he or she accepted the employment and where, in the judgment of the department, the distance is customarily traveled by workers in the individual's job classification and labor market, nor because of any other significant work factor which was generally known and present at the time he or she accepted employment . . .

■ Until RCW 50.20.050 was amended in 1977, "good cause" had not been limited to work–connected factors. *In re Bale*, 63 Wn.2d 83, 385 P.2d 545 (1963); Laws of 1977,

1st Ex. Sess., ch. 33, § 4. The amended good cause excep-
tion no longer covers the circumstances presented in *In re
Bale* and *Ayers v. Department of Empl. Sec.,* 85 Wn.2d
550, 536 P.2d 610 (1975), in which the employee's quitting
employment in order to follow a spouse to a new residence
was held to be good cause under the predecessor to RCW
50.20.050. Instead, the circumstances in *In re Bale* and
*Ayers* are covered by the "marital status" or "domestic
responsibilities" exception of RCW 50.20.050(4). *Yamauchi
v. Department of Empl. Sec.,* 96 Wn.2d 773, 777–78, 638
P.2d 1253 (1982). See discussion, *infra.* Under the clear
language of the amended statute, neither following a spouse
to a new location, nor any other compelling personal reason,
unless it is somehow "work connected", can constitute good
cause for quitting employment.

Davis cites *Vergeyle v. Department of Empl. Sec.,* 28
Wn. App. 399, 402, 623 P.2d 736 (1981) for the proposition
that good cause is not limited to work–connected factors. In
*Vergeyle* the employer had arbitrarily informed the
employee only 2 days before her scheduled vacation leave
that it would not grant her leave to accompany her invalid
husband to visit his mother. While we need not reach the
issue in this case, we note that difficulties with an unrea-
sonable employer might be a work–connected factor causing
one to quit employment, subject to the other requirements
of RCW 50.20.050(3). The *Vergeyle* court, however, stated
that the definition of good cause is unaffected by the 1977
amendment to RCW 50.20.050. *Vergeyle,* at 402–03. We
hereby disapprove *Vergeyle* to the extent that it holds that
good cause for leaving employment is not limited to work–
connected factors under the amended statute. Only where a
compelling personal reason to quit is somehow work con-
nected might the good cause exception apply. *See Coleman
v. Department of Empl. Sec.,* 25 Wn. App. 405, 607 P.2d
1231 (1980) (unreasonable response by employer to threat-
ened assault on employee by co–worker).

Here, Davis' decision to voluntarily quit her employment
was not motivated by any work–connected factor. Although

we assume she had compelling personal reasons to move to Port Angeles, they were not related to the situation at her workplace, which had not significantly changed in the 13 years she worked there. We note that Davis does not assert that the failure of Equifax to transfer her to Port Angeles was unreasonable; to the contrary, she recognized that there was simply no opening in that office.

An employee might have compelling personal reasons to leave even very satisfactory employment, such as seeking an education or a better climate, or moving closer to friends and relatives. The Legislature has chosen not to include such reasons in the good cause exception.

MARITAL STATUS AND DOMESTIC RESPONSIBILITIES

RCW 50.20.050(4) provides a separate exception to disqualification for employees who voluntarily quit work without good cause. This "marital status" and "domestic responsibilities" exception provides:

> Subsections (1) and (3) of this section shall not apply to an individual whose marital status or domestic responsibilities cause him or her to leave employment. Such an individual shall not be eligible for unemployment insurance benefits until he or she has requalified, either by obtaining bona fide work and earning wages of not less than the suspended weekly benefit amount in each of five calendar weeks or by reporting in person to the department during ten different calendar weeks and certifying on each occasion that he or she is ready, able, and willing to immediately accept any suitable work which may be offered, is actively seeking work pursuant to customary trade practices, and is utilizing such employment counseling and placement services as are available through the department.

■■■ We note at the outset that, while the definition of the term "meretricious" has lost its original derogatory connotation in recent court decisions, the term "marital" is still defined as "of or relating to marriage or the marriage state". *Webster's Third New International Dictionary* (1981). Absent a statutory definition, words of a statute must be accorded their ordinary meaning. *Pacific First Fed.*

*Sav. & Loan Ass'n v. State,* 92 Wn.2d 402, 409, 598 P.2d 387 (1979). The "marital status" exception thus does not cover Davis' situation. *See also McFadden v. Elma Country Club,* 26 Wn. App. 195, 613 P.2d 146 (1980) (prohibition against discrimination in real estate transactions because of "marital status" does not include discrimination against couples who choose to live together without being married).

This court has held that, under RCW 50.20.050(4), a person who voluntarily leaves her job in order to marry and move to a place where it would be impracticable to commute to her old job leaves work because of "marital status". *Yamauchi,* at 782. Davis urges this court to extend *Yamauchi* to cover single people who voluntarily leave employment to live in meretricious relationships. In *Yamauchi,* while we did not find that the "marital status" exception requires that the employee be married at the time of quitting employment, we did require a nexus between the employee's quitting employment and marriage; the employee was not entitled to benefits until the marriage actually took place. *Yamauchi,* at 781. The *Yamauchi* opinion does not cover leaving employment to live in a meretricious relationship.

Davis also urges this court to extend our decision in *In re Marriage of Lindsey,* 101 Wn.2d 299, 678 P.2d 328 (1984) to cover her situation. In *Lindsey,* this court held that in disposing of property accumulated during a meretricious relationship, courts must examine the relationship and the property and make a just and equitable disposition. *Lindsey* overruled the rigid presumption of *Creasman v. Boyle,* 31 Wn.2d 345, 196 P.2d 835 (1948) that property acquired by a man and a woman not married to each other, but living together as husband and wife, is not community property, and thus belongs to the one with legal title. In *Lindsey* the concern was a fair distribution of property between two parties in a marriage–like union. *Lindsey* does not stand for the proposition that a meretricious relationship is the same as a marriage. As the California Supreme Court noted in the factually similar case of *Norman v.*

*Unemployment Ins. Appeals Bd.,* 34 Cal. 3d 1, 7, 663 P.2d 904, 192 Cal. Rptr. 134 (1983), the extension of property distribution rights of spouses to partners in meretricious relationships does not elevate meretricious relationships themselves to the level of marriages for any and all purposes.

Davis also argues that her relationship to Stephens gives rise to "domestic responsibilities" under RCW 50.20.050(4). The Department of Employment Security has promulgated interpretive regulations that define and limit the application of the "domestic responsibilities" exception of RCW 50.20.050(4). Those regulations are entitled to deference by this court. *Franklin Cy. Sheriff's Office,* 97 Wn.2d at 325. WAC 192–16–015(1) states in part: "Domestic responsibilities mean obligations or duties relating to the individual's immediate family, and include the illness, disability, or death of a member of the claimant's 'immediate family' as defined in WAC 192–16–013." "Immediate family" is defined in WAC 192–16–013(3)(b) as "the individual's spouse, children (including unborn children), step–children, foster children, or parents of either spouse, whether living with the individual or not, and other relatives who temporarily or permanently reside in the individual's household."

We see no reason to reject these regulations. They comport well with the dictionary definitions of "domestic", as "relating to the household or the family". *Webster's Third New International Dictionary* (1981). The limitation of the domestic responsibilities exception to times of special need, such as illness or disability, also comports well with the purpose of the statute to protect those involuntarily unemployed.

Davis' move to Port Angeles is not related to her immediate family or any responsibility within the scope of the statute and regulations. She is not entitled to the benefit of the domestic responsibilities exception.

## EQUAL PROTECTION

Davis argues that discrimination against a person in

a meretricious relationship vis–a–vis a married person violates the fourteenth amendment to the United States Constitution. The right to marry is fundamental. *Zablocki v. Redhail*, 434 U.S. 374, 54 L. Ed. 2d 618, 98 S. Ct. 673 (1978). However, this court has held that the right to live in a meretricious relationship without marrying is not fundamental; therefore, legislation that draws distinctions between married persons and those living in such relationships is subject to the less rigorous scrutiny of the "rational relationship" test. *Willard v. Department of Social & Health Servs.*, 91 Wn.2d 759, 763, 592 P.2d 1103 (1979).

Where, as here, legislation involves the grant of limited public funds, reviewing courts should give deference to allocation decisions by state officials. *Dandridge v. Williams*, 397 U.S. 471, 486, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970); *Willard*, at 763. Statutory discrimination in public welfare programs will be upheld if any state of facts reasonably may be conceived to justify it. *Dandridge*, at 485; *Conklin v. Shinpoch*, 107 Wn.2d 410, 417, 730 P.2d 643 (1986).

■ Under the "rational relationship" test legislation must satisfy three requirements: (1) it must apply alike to all members of the designated class; (2) there must be some basis in reality for reasonably distinguishing between those falling within the class and those falling outside of it; and (3) the challenged classification must have a rational relationship to the purposes of the challenged statute. *Conklin*, at 418.

■ Here, the challenged classification is persons in meretricious relationships seeking unemployment compensation. RCW 50.20.050 satisfies the first prong of the rational relationship test, as it applies equally to all applicants within that classification. The legislation also satisfies the second prong. We held in *Willard* that a classification based on marriage is reasonable, in view of the fact that the Legislature might consider marriage to be evidence of a serious commitment to the stability of the family unit. *Willard*, at 764.

RCW 50.20.050 also satisfies the third prong of the test. The purpose of the Employment Security Act is to benefit persons unemployed through no fault of their own. RCW 50.01.010. The fact that funds available for distribution under the Employment Security Act are finite is not in itself a sufficient basis to uphold the classification. *Conklin,* at 419–21. However, the State is entitled to consider marriage as evidence of a serious commitment to a stable family unit. An employee who voluntarily quits work because of the needs of a marriage may be considered to have no "fault" and therefore not disqualified from unemployment compensation.

CONCLUSION

The Employment Security Act has only limited exceptions to the disqualification of applicants who voluntarily quit work. Davis failed to establish that any of the exceptions apply to her situation. Furthermore, the act's denial of benefits to those who leave work in order to live in a meretricious relationship, as opposed to those who leave in order to follow a spouse to a new location, does not offend principles of equal protection.

We affirm.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.