[No. 12296-4-III.    Division Three.    March 10, 1994.]

KILE M. LAWTER, *Appellant,* v. THE EMPLOYMENT SECURITY DEPARTMENT, ET AL, *Respondents.*

*Clairmont E. Hormel,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Mary C. Lobdell* and *Andrew A. Fitz, Assistants,* for respondents.

SWEENEY, J. — Kile M. Lawter was discharged as an elementary school janitor by Soap Lake School District because he threatened his supervisors. He appeals a Grant County Superior Court decision affirming the denial of unemployment benefits. We affirm.

# I

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Lawter was a janitor at Delancey-Houghton Elementary School in the Soap Lake School District for 5 years. With few exceptions, he received favorable performance reviews. In August 1990, the school district reduced his working hours from 8 per day to $4^1/2$; his pay was also reduced from $1,586 to $892 per month. Mr. Lawter protested the district's action to the school board to no avail. He criticized the district in a letter to the local newspaper. He also filed a union grievance.

In late August, Mary Ann Faunce was hired as the new principal at Delancey-Houghton. From the outset, Ms. Faunce was not happy with Mr. Lawter's work. She sent him seven letters of reprimand. She complained about the way he completed a daily checklist and the way in which he did his work including the priority he placed on various work assignments. He was warned and reprimanded by Ms. Faunce for what she considered shortcomings in his work. Mr. Lawter responded that he was expected to accomplish in $4^1/2$ hours almost all of the tasks which had previously required a full 8-hour work shift.

On September 17, Ms. Faunce found a .30.06-caliber shell on a keychain, a lead bullet without casing, gunpowder, or primer, and a .50-caliber shell on Mr. Lawter's desk in the custodian area; she reported these to Linda Creech, Soap Lake School District Superintendent. The .50-caliber shell was a World War II souvenir, incapable of being fired. Ms. Creech took the items without telling Mr. Lawter and gave them to the Soap Lake police, who concluded they were not illegal and ultimately returned them. Mr. Lawter was nonetheless reprimanded for having live ammunition in his desk.

On September 24, Ms. Faunce gave Mr. Lawter a written warning concerning his performance. Mr. Lawter approached Ms. Faunce to discuss the warning. She refused to discuss it

until the next day. She continued walking to her car which was across the street. Mr. Lawter waved the warning letter at Ms. Faunce and yelled, "This has to stop, I'll get even".

Mr. Lawter confronted Ms. Creech in her office. He was upset because the "ammunition" had been removed from his desk and local police refused to immediately return the items. He told Ms. Creech how angry he was. He said "[i]f these actions do not stop, I will not be responsible for my actions." Ms. Creech responded, "Are you saying that you are not responsible for your actions", to which Mr. Lawter responded, "I will not be responsible for my actions". Ms. Creech then repeated the question and Mr. Lawter repeated the answer. During the confrontation, he was standing directly above Ms. Creech and speaking in what she believed to be a loud, threatening tone. She considered his confrontation a serious threat. Mr. Lawter acknowledges the discussion but believed he used the word "reactions" and not the word "actions".

Mr. Lawter worked until September 26 and then took a 3-week leave for health reasons. On the day he left, Ms. Faunce gave him another letter of reprimand for failing to secure the building overnight and spending 35 minutes outside the building.

On October 2, someone vandalized Ms. Faunce's car with paint stripper while it was parked at school, causing $8,000 in damage. Mr. Lawter was charged with malicious mischief and released pending trial. As a condition of his pretrial release, he was forbidden to contact Ms. Faunce or Ms. Creech and was required to stay off school grounds. The administrative law judge (ALJ) found the school district had no proof Mr. Lawter damaged the car.

On October 17, Mr. Lawter was discharged for cause. In her letter notifying him of the discharge, Ms. Creech expressed "concern for the safety of employees and students of the district as well as security to the building". The next day, Ms. Creech denied Mr. Lawter's union grievance.

On October 29, Mr. Lawter applied for unemployment benefits. His application was rejected because of the circumstances surrounding his discharge. He filed an administrative appeal with the Employment Security Department. Following a hearing on January 30, 1991, the ALJ affirmed the denial of benefits, concluding that Mr. Lawter had been discharged for misconduct on the basis of threats made against Ms. Faunce and Ms. Creech. The Commissioner of the Employment Security Department and the Superior Court affirmed the ALJ's decision. Mr. Lawter appeals.

## II

### DISCUSSION

■ A. Standard of Review. In reviewing an administrative agency's final decision, we stand in the same position as the trial court. *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993); *Johnson v. Employment Sec. Dep't*, 64 Wn. App. 311, 316, 824 P.2d 505 (1992). Those circumstances in which we will grant relief from an administrative agency's order include: (1) when the agency has erroneously interpreted or applied the law; or (2) when the order is not supported by substantial evidence, when viewed in light of the whole record. RCW 34.05.570(3); *Tapper*, at 402.

■ B. Entitlement to Unemployment Benefits — Exceptions. The Employment Security Act provides unemployment benefits to help those who have become unemployed through no fault of their own. RCW 50.01.010. Generally, unemployed workers are eligible for benefits unless they are disqualified by statute. *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 389, 687 P.2d 195 (1984). A worker may be disqualified from receiving unemployment benefits if he or she voluntarily leaves work without good cause. RCW 50.20.050(1). He or she may be disqualified if termination results from misconduct connected with his or her work. RCW 50.20.060. Both sections, however, will not apply to the same set of facts. The characterization of a job separation as either a voluntary termination or a discharge for

misconduct triggers which statute and, necessarily, which analysis we apply. *Safeco*, at 389.

Mr. Lawter argues that his reduction in hours and pay and the provocation by Ms. Faunce and Ms. Creech were sufficient to justify his voluntary separation. He contends that to establish good cause for leaving work voluntarily, an employee must establish that there was a reason of such a compelling nature that a reasonably prudent person would have quit. WAC 192-16-009(1)(b). He concludes an employee may voluntarily leave his job if "related circumstances have so changed as to amount to a substantial involuntary deterioration of the work factor . . .". RCW 50.20.050(3); WAC 192-16-009(2)(b).

Mr. Lawter's separation from his job was properly characterized as a discharge for misconduct. He did not quit voluntarily, although he may well have been justified in doing so. He was discharged based on allegations of misconduct. We thus analyze his disqualification for benefits under the misconduct statute, RCW 50.20.060.

C. <u>Misconduct.</u> The determination of what constitutes misconduct pursuant to RCW 50.20.060 is a mixed question of law and fact. *Tapper*, at 402. In analyzing this question, we first identify the factual basis for the determination of misconduct and then determine whether there is substantial evidence to support those factual findings, giving great deference to the ALJ's findings. *Tapper*, at 403. Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person that the declared premise is true. *Olmstead v. Department of Health*, 61 Wn. App. 888, 893, 812 P.2d 527 (1991). We determine de novo whether the findings support the conclusion of misconduct, as a matter of law. *Tapper*, at 403.

Mr. Lawter admits the substance of the statements made to both Ms. Faunce and Ms. Creech. The ALJ found that Mr. Lawter's statements had been made and were perceived as threats. Findings of fact 5, 6. Mr. Lawter has not assigned error to these findings. Unchallenged findings of

fact are deemed verities on appeal. *Association of Capitol Powerhouse Eng'rs v. State*, 89 Wn.2d 177, 183, 570 P.2d 1042, 95 A.L.R.3d 1090 (1977).

■ Although denominated a conclusion of law, the ALJ's conclusion 2 includes findings of fact:

> This leaves the two perceived threats: one to Ms. Faunce and one to Ms. Creech. The undersigned feels that one such threat alone could simply be a matter of temper. The two together, however, made it reasonable for Ms. Faunce to believe that he would get even with her. It is understandable that Ms. Creech would not want an employee working for her who "would not be responsible for his actions."

A finding of fact erroneously described as a conclusion of law is reviewed as a finding. *Ellenburg v. Larson Fruit Co.*, 66 Wn. App. 246, 251, 835 P.2d 225, *review denied*, 120 Wn.2d 1011 (1992). All three findings are supported by the testimony of Mr. Lawter, Ms. Faunce and Ms. Creech.

■ Mr. Lawter also challenges the factual basis for finding of fact 10 — that he was discharged because of the threats. The finder of fact must "analyze the facts of each case to determine what actually caused the employee's separation [from employment]". *Safeco*, at 392-93. Again, there is ample evidence here to support the finding that Mr. Lawter's threats were the actual cause of his separation from employment. Ms. Creech testified that threats were one of the three factors used to justify the discharge. The Employment Security Department's documentary evidence indicated Mr. Lawter's threats were a reason for his discharge. Finally, the letter of discharge specifically mentioned Mr. Lawter's personal threat.

We next turn to the legal issue of whether Mr. Lawter's threats constitute disqualifying conduct. In *Macey v. Department of Empl. Sec.*, 110 Wn.2d 308, 752 P.2d 372 (1988), the court defined three elements justifying disqualification for misconduct: "(1) There must be misconduct which (2) is connected with the employee's work which leads to (3) unemployment which is the fault of the employee such that his unemployment is in effect voluntary." *Macey*, at 316. Inten-

tional conduct which also satisfies the criteria for fault and connection to one's work may constitute misconduct. *Macey,* at 318; *Johnson,* at 315. The criteria set out in *Macey* are not directly applicable to the facts here because Mr. Lawter's conduct did not violate a specific rule of his employers.[1]

Mr. Lawter's position is that the threats may have constituted misconduct if unprovoked, but here they were clearly provoked by the actions of his employer. The Commissioner considered the pressure Mr. Lawter was under as a mitigating factor and found it to be an insufficient excuse for his conduct. We agree. Our conclusion is consistent with that of other jurisdictions. *See generally* M. David LeBrun, Annotation, *Employee's Act or Threat of Physical Violence as Bar to Unemployment Compensation,* 20 A.L.R.4th 637 (1983).

The decision of the court affirming the Commissioner is affirmed.

THOMPSON, C.J., and FRIEL, J. Pro Tem., concur.

Review denied at 124 Wn.2d 1019 (1994).

---

[1]The court in *Macey* stated that given the "mandate of liberal construction . . . unsatisfactory job performance whether stemming from inability to perform, errors of judgment or ordinary negligence does not constitute misconduct." *Macey,* at 318.