[No. 42305-3-I.   Division One.   June 14, 1999.]

DONNA HANEY, *Appellant*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent*.

*Paul H. King*, for appellant.
*Steve Victor*, for respondent.

KENNEDY, C.J. — Donna Haney's employer, LifeGuard Monitoring Systems, discharged her for insubordination after she—in response to a letter of reprimand warning her that any further personal attacks on her co-workers or management would result in her immediate discharge—accused management of having big egos and self-serving personal agendas. The Employment Security Department Commissioner denied Haney unemployment benefits, concluding that she engaged in disqualifying misconduct. The superior court affirmed, and Haney appeals.

First, we reject Haney's contention that National Labor Relations Act (NLRA) principles should be considered in determining if an individual claimant not covered under the NLRA engaged in disqualifying misconduct under the Employment Security Act (ESA), because doing so would not further the purposes of the NLRA or the ESA and would inevitably lead to unnecessary confusion regarding what does or does not constitute disqualifying misconduct. Second, applying the ESA without reference to NLRA principles, we conclude that the administrative record in

this case sufficiently supports the Employment Security Department Commissioner's conclusion that Haney engaged in disqualifying misconduct. Accordingly, we affirm the denial of unemployment benefits.

## FACTS

LifeGuard Monitoring Systems hired Donna Haney on July 19, 1994, to work in its customer service department. During her employment, Haney consistently displayed a negative attitude and criticized her fellow employees verbally and with written "nasty grams." Administrative Hearing Record (AHR) at 93. On November 9, 1996, Haney initiated a hostile confrontation with another employee. Haney screamed at the other employee, warned the other employee not to accuse her of making a certain work-related mistake, and demanded that the other employee leave the premises. "The confrontation caused the other employee to feel humiliated, intimidated, and verbally and physically threatened." AHR at 94.

In response to the November 9, 1996 incident, LifeGuard gave Haney a written letter of reprimand, condemning her conduct. In the letter, LifeGuard referenced an earlier job performance review that included the following comments:

2. Donna displays an attitude toward peers and management that is not consistent with the company's objective for positive mental attitude.

3. Donna's attitude is noted as disruptive amongst fellow staff members.

4. Donna's criticism towards fellow staff members is generally negative, rather than constructive.

AHR at 76. LifeGuard then advised Haney that "[a]ny further personal conduct of this nature [would] be grounds for immediate termination," and that "[a]ny dispute of said incident and this letter of reprimand, must be submitted in writing by November 22, 1996[.]" AHR at 76.

In a letter dated November 14, 1996, Haney disputed

management's charge that she was disruptive, overly critical, and displayed a negative attitude toward her co-workers and management. In addition, Haney accused management of having big egos and self-serving personal agendas:

> In my 30 years in the work force, 20 years of it in lower to middle management, I have never seen a management team with egos as big or agendas as personal. This is self serving [sic] not company or staff serving.

AHR at 77. On January 24, 1997, citing her response to the letter of reprimand as the proverbial last straw, LifeGuard discharged Haney:

> The grievance filed against you on November 9, 1996 is representative of the performance issues specifically outlined in your performance review which were noted in the section titled "Needs Improvement." The unusual nature of the grievance clearly identified that you posed a serious threat to the safety or health of other employees, and accordingly you were issued a final warning with emphasis on termination should any further personal conduct of this nature continue.

> Your reply given to senior management on November 14, 1996 with regards to your final warning of reprimand displayed a clear disregard and disrespect for management, and is determined to be an act of insubordination to management. Immediate discharge is justified.

AHR at 78.

The State Employment Security Department denied Haney unemployment benefits under RCW 50.20.060, concluding that LifeGuard discharged her for work-related misconduct. An Administrative Law Judge (ALJ) from the Office of Administrative Hearings affirmed the Department's decision and the Employment Security Department Commissioner affirmed the Office of Administrative Hearings' decision, adopting the ALJ's findings of fact and conclusions of law as his own. Haney then filed a petition for review in King County Superior Court, and the Superior Court affirmed the Commissioner's order denying Haney unemployment benefits:

> The court gave serious consideration to petitioner's argument that because her inappropriate remarks about management were made in the context of responding to a letter of reprimand they should be given greater leeway under the so-called "equality principle" embodied in a number of NLRB decisions. *See, e.g., American Telephone and Telegraph Co. v. NLRB*, 521 F.2d 1159 (2d Cir. 1975). However, given the totality of the circumstances described in this fact pattern, the court rejects petitioner's contention that this activity was not intentional misconduct thus justifying the decision of the Commissioner below.

Clerk's Papers at 12. Haney appeals the Superior Court's order affirming the Employment Security Department Commissioner's decision denying her unemployment benefits.

## DISCUSSION

■ "Under the Employment Security Act, an individual who is discharged 'for misconduct connected with his or her work' is disqualified from benefits." *Hamel v. Employment Sec. Dep't*, 93 Wn. App. 140, 145, 966 P.2d 1282 (1998) (quoting RCW 50.20.060), *review denied*, 137 Wn.2d 1036 (1999). The ESA defines "misconduct" as "an employee's act or failure to act in willful disregard of his or her employer's interest where the effect of the employee's act or failure to act is to harm the employer's business." RCW 50.04.293. Therefore, to constitute "disqualifying misconduct," the employee's conduct must be "both willful ('willful disregard of [the] employer's interest') and harmful to the employer ('effect . . . is to harm the employer's business.')." *Dermond v. Employment Sec. Dep't*, 89 Wn. App. 128, 133, 947 P.2d 1271 (1997) (quoting *Galvin v. Employment Sec. Dep't*, 87 Wn. App. 634, 641-42, 942 P.2d 1040 (1997), *review denied*, 134 Wn.2d 1004 (1998)); *accord Hamel*, 93 Wn. App. at 144-47.

### I. National Labor Relations Act

■ As an initial matter, Haney, relying on cases inter-

preting section 7 of the National Labor Relations Act, contends that an employee responding to an employer's disciplinary action should be allowed to make candid—or even insulting—comments without this otherwise insubordinate conduct constituting disqualifying misconduct. But Haney concedes that her conduct is not covered by NLRA and does not argue that the NLRA preempts the ESA's definition of misconduct. Therefore, the issue presented is whether NLRA principles should be considered when determining if a claimant not covered under the NLRA engaged in disqualifying misconduct under the ESA.

The NLRA's declared purpose is to equalize the bargaining positions of employers and employees "by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." 29 U.S.C. § 151 (1998). To carry out this purpose, the National Labor Relations Board (NLRB) "has long held that while employees are engaged in collective bargaining, including the presentation of grievances, they are essentially insulated from discipline for statements made to management representatives which, if made in other contexts, would constitute insubordination." *Ryder Truck Lines, Inc.*, 239 N.L.R.B. 1009, 1010 (1978); *accord Earle Indus. v. NLRB*, 75 F.3d 400, 405 (8th Cir. 1996) ("In view of the purposes of the NLRA, we have recognized that an employer cannot insist on subordination in the context of bargaining or grievance processes.").[1] From the NLRB's perspective, if employees are not afforded a reasonable amount of leeway in their negotiations with

---

[1]Likewise, under Washington's Public Employees' Collective Bargaining statute, a covered employee's conduct during a collective bargaining or grievance proceeding is protected if it is "reasonable" under the circumstances:

Reasonable employee activity is protected while unreasonable employee activity is not—but reasonableness is gauged in the context of the labor dispute, recognizing that the law favors "a robust exchange of viewpoints," and that economic pressure is a legitimate tool.

management, the equal bargaining power and collective representation aims of the NLRA could be seriously undermined:

> "A frank, and not always complimentary, exchange of views must be expected and permitted the negotiators if collective bargaining is to be natural rather than stilted. . . . If an employer were free to discharge an individual employee because he resented a statement made by the employee during a bargaining conference, either one of two undesirable results would follow: collective bargaining would cease to be between equals (an employee having no parallel method of retaliation), or employees would hesitate ever to participate personally in bargaining negotiations, leaving such matters entirely to their representatives."

*Crown Cent. Petroleum Corp. v. NLRB*, 430 F.2d 724, 731 (5th Cir. 1970) (quoting *Bettcher Mfg. Corp.*, 76 N.L.R.B 526, 527 (1948)).

For example, in *Hawaiian Hauling Service, Ltd. v. NLRB*, 545 F.2d 674, 675 (9th Cir. 1976), after an employee called the employer's general manager a liar during a grievance proceeding, the general manager immediately discharged the employee for insubordination. The NLRB concluded that the discharge was repugnant to NLRA policy permitting employees to pursue grievances and ordered the employer to reinstate the employee. *Hawaiian Hauling Serv., Ltd.*, 219 N.L.R.B. 765, 766 (1975), *enforced*, 545 F.2d 674 (9th Cir. 1976). On appeal, the Ninth Circuit Court of Appeals noted that "grievance meetings often generate high emotions" and that "a large number of grievances turn on credibility[.]" *Hawaiian Hauling*, 545 F.2d at 676-77. Therefore, the court held that "the Board was within its discretion when it viewed the dispute from the perspective of the possible chill on pursuing grievances" and enforced the NLRB's reinstatement order. *Id.* at 677.

Although Haney's argument contains a certain amount

---

*Vancouver Sch. Dist. No. 37 v. Service Employees Int'l Union*, 79 Wn. App. 905, 923, 906 P.2d 946 (1995), *review denied*, 129 Wn.2d 1019 (1996).

of surface logic, careful scrutiny reveals that these NLRA principles should not be considered in determining if an individual claimant not covered under the NLRA engaged in disqualifying misconduct under ESA when disputing an employer's disciplinary action. First, the only reason that the NLRB tolerates this otherwise insubordinate behavior is to further the equal bargaining power and collective representation aims of the NLRA. As Haney concedes, an individual claimant not covered under the NLRA does not act on behalf of a union or any fellow employees. Second, if this court were to hold that insubordination in response to a disciplinary action does not constitute disqualifying misconduct, an employee could invoke his or her employer's disciplinary procedures, harangue management, and be discharged without sacrificing unemployment benefits. Such a holding would contravene the ESA's purpose of reducing the impact of involuntary unemployment on persons "unemployed through no fault of their own." RCW 50.01.010.

Admittedly, it would be difficult for an employee to vigorously dispute an employer's disciplinary action without challenging some of the employer's reasons or bases for taking the disciplinary action. But RCW 50.04.293 and RCW 50.20.060 adequately protect employees who choose to take issue with an employer's disciplinary action. That is, if an employee responds to a disciplinary action taken by an employer in a reasonable, restrained, and respectful manner, he or she would not be willfully disregarding his or her employer's interests or actually harming his or her employer's business. Consequently, interjecting NLRA principles into unemployment compensation cases involving individual claimants not covered under the NLRA would not further the purposes of the NLRA or the ESA, and would inevitably lead to unnecessary confusion regarding what does or does not constitute disqualifying misconduct under the ESA. Therefore, we apply the ESA without reference to NLRA principles to determine if a claimant

not covered under the NLRA, such as Haney, engaged in disqualifying misconduct.[2]

## II. DISQUALIFYING MISCONDUCT

■ ■ As discussed above, to constitute "disqualifying misconduct" under the ESA, the employee's conduct must be "both willful . . . and harmful to the employer[.]" *Dermond*, 89 Wn. App. at 133 (citations omitted). This inquiry generally involves a mixed question of law and fact. *Id.* at 132. "On mixed questions of law and fact, we determine the law independently and then apply the law to the facts as found by the agency." *Hamel*, 93 Wn. App. at 145.[3] In the unemployment benefits context, what constitutes will-

---

[2]Because Haney concedes that her response to the letter of reprimand is not a protected activity under the NLRA, we need not and do not decide if NLRA-protected activity can constitute disqualifying misconduct under Washington's Employment Security Act. We note, however, that state courts are split on this issue. For example, in Pennsylvania, "although NLRB rulings are not binding on [the] courts, a determination that the Act protects the claimant's activity is persuasive when considering whether the same behavior constitutes willful misconduct pursuant to the Pennsylvania Unemployment Compensation Law." *Caterpillar, Inc. v. Unemployment Compensation Bd. of Review*, 550 Pa. 115, 703 A.2d 452, 457 (1997). In Ohio, on the other hand, federal labor law is irrelevant for purposes of determining if an employee engaged in disqualifying misconduct under Ohio's Unemployment Compensation Act:

> [A] hearing officer from the Bureau of Employment Services cannot evaluate the behavior of the union and the employer according to the National Labor Relations Act. Federal labor law does not apply and confuses the relevant focus of the hearing officer's inquiry: "Are the employees unemployed through no fault of their own?"

*Alsip v. Klosterman Baking Co.*, 113 Ohio App. 3d 439, 680 N.E.2d 1320, 1325 (1996), *review denied*, 674 N.E.2d 376 (1997); *accord Bernhardt v. Labor & Indus. Review Comm'n*, 207 Wis. 2d 292, 558 N.W.2d 874, 875 (Ct. App. 1996) (holding that "NLRB law does not constitute persuasive authority within Wisconsin's employment compensation law" for purposes of determining if a claimant engaged in disqualifying misconduct), *review denied*, 208 Wis. 2d 213, 562 N.W.2d 602 (1997); *see also New York Tel. Co. v. New York Labor Dep't*, 440 U.S. 519, 529 n.15, 99 S. Ct. 1328, 59 L. Ed. 2d 553 (1979) (plurality opinion) (suggesting that if a state employment agency applied NLRA principles to decide if a claimant qualifies for state unemployment benefits, the agency would be impermissibly infringing on the NLRB's exclusive authority to determine if an unfair labor practice occurred).

[3]"On issues of law, we may substitute our judgment for that of the administrative body; however, we accord substantial weight to the agency's view of the law it administers." *Hamel*, 93 Wn. App. at 144-45. On issues of fact, we review the administrative record as a whole for substantial evidence supporting the agency's findings. *Id.*

ful misconduct that actually harms an employer's business is a question of law; whether a particular claimant engaged in willful misconduct that actually harmed his or her employer's business is a question of fact.

In this case, the ALJ found that the "content and tone of [Haney's] written response to the letter of reprimand was in knowing and intentional disregard of reasonable employer expectations well known to the claimant and well known in the workplace, and were indicative of an ongoing attitudinal problem which resulted in harm to the employer's legitimate interests." AHR at 95.[4] The ALJ also found that "[t]he conduct continued despite counseling and warning," and "was not beyond the claimant's reasonable control." AHR at 95. Therefore, the ALJ concluded that "the conduct for which [Haney] was discharged was misconduct within the meaning of RCW 50.20.060." AHR at 95.

### A. Willful Disregard of Employer's Interests

"[A]n employee acts with willful disregard when he [or she] (1) is aware of his [or her] employer's interest; (2) knows or should have known that certain conduct jeopardizes that interest; but (3) nonetheless intentionally performs the act, willfully disregarding its probable consequences." *Hamel*, 93 Wn. App. at 146-47. "[A]n employer's previous warnings to avoid certain behavior may provide strong evidence of the employee's knowledge that the conduct is inconsistent with the employer's interest." *Id.* at 148.[5] "Mere incompetence, inefficiency, erroneous judgment, or ordinary negligence does not constitute miscon-

---

[4]A finding of fact mislabeled as a conclusion of law is reviewed as a finding of fact. *Miller v. Anderson*, 91 Wn. App. 822, 825 n.1, 964 P.2d 365 (1998).

[5]In *Hamel*, Division Two held that a violation of a company rule after repeated warnings in and of itself is not enough to establish willful misconduct. *Hamel*, 93 Wn. App. at 146-48. Division One's opinion in *Dermond* can be read as permitting a finding of willful misconduct where the claimant violated a company rule after repeated warnings: "In deciding whether an employee's conduct is disqualifying misconduct under the statute, we examine whether the employee's violation of the employer's rule is intentional, grossly negligent, or continue[s] to take place after notice or warnings." *Dermond*, 89 Wn. App. at 133 (citation and internal

duct for purposes of denying unemployment compensation." *Dermond*, 89 Wn. App. at 133.

Haney contends that the administrative record does not support a finding that her response to the letter of reprimand was made in willful disregard of LifeGuard's interests, because she was not specifically warned that a candid, insulting response to the letter of reprimand was unacceptable. But Haney states the issue too narrowly. Although her response to the letter of reprimand was the proverbial last straw, LifeGuard discharged her for her continuously disruptive, overly critical, and negative attitude toward her co-workers and management. Therefore, the true issue is whether the administrative record supports a finding that Haney's response to the letter of reprimand, in light of her continuously disruptive, overly critical, and negative attitude toward her co-workers and management, was made in willful disregard of LifeGuard's interests.

A review of the administrative record indicates that Life-Guard repeatedly warned Haney that her overly critical personal comments to her fellow workers and her demonstrative lack of respect for management violated company policy and were adversely affecting the workplace. In addition, in the letter of reprimand, LifeGuard specifically warned Haney that any further personal attacks on her co-workers or management would result in her immediate discharge. Moreover, the fact that Haney accused LifeGuard's management of having big egos and self-serving personal agendas in a typed response demonstrates some forethought and purpose. Therefore, we conclude that the administrative record sufficiently supports a finding that Haney's response to the letter of reprimand, in light of her continuously disruptive, overly critical, and negative at-

---

quotation marks omitted). But as Division Two notes, there must be evidence that the claimant acted intentionally and not merely incompetently or negligently. *Hamel*, 93 Wn. App. at 146-47.

titude toward her co-workers and management, was made in willful disregard of LifeGuard's interests.

### B. Actual Harm to Employer's Business

■ "[T]o establish that an employee's conduct had the effect of causing harm to the employer's business, actual detriment to the employer's operations must be objectively demonstrated." *Dermond*, 89 Wn. App. at 135-36. "While the harm suffered need not be tangible or economic, . . . the Legislature intended that it be more than imaginary or theoretical." *Id.* at 135. "Each case must be examined on its own facts." *Id.* at 136.

In this case, Douglas J. Watson, a LifeGuard Sales Manager, testified that Haney's conduct was "intimidating" to other employees, that the November 9, 1996 incident was "very disruptive," and that the other employee involved in the November 9, 1996 incident "was in fear of her well-being." AHR at 24. Watson further testified that management was "taken aback" by Haney's response to the letter of reprimand, AHR at 21, and that management felt compelled to take action: "We couldn't tolerate this perpetual feeling of . . . what was going on in the office, all the—air was so thick you could almost cut it with a knife." AHR at 32. Needless to say, an employer has a strong interest in maintaining a congenial and productive workplace. *See Binkley v. City of Tacoma*, 114 Wn.2d 373, 382, 787 P.2d 1366 (1990). Therefore, we conclude that the administrative record sufficiently supports the ALJ's finding that Haney's response to the letter of reprimand, in light of her continuously disruptive, overly critical, and negative attitude toward her co-workers and management, actually harmed LifeGuard's business.

In sum, applying the ESA without reference to NLRA principles, the administrative record sufficiently supports the ALJ's findings that Haney willfully disregarded Life-Guard's known interests and actually harmed LifeGuard's business when she, in a typed response to the letter of reprimand, accused management of having big egos and self-serving personal agendas. These findings, in turn, support

142

the ALJ's conclusion that Haney engaged in disqualifying misconduct under the ESA. Therefore, we affirm the Employment Security Department's denial of Haney's claim for unemployment benefits.

BAKER and AGID, JJ., concur.