[No. 22458-9-III. Division Three. March 17, 2005.]

DONALD W. BAUER, *Appellant*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent*.

*Stanley A. Kempner, Jr.*, for appellant.

*Robert M. McKenna, Attorney General*, and *Jacqueline D. Bolden, Assistant*, for respondent.

¶1 SCHULTHEIS, J. — In Washington, unemployment compensation benefits may be denied to an employee who voluntarily leaves work without cause. RCW 50.20.050. Donald Bauer was terminated from his employment when he lost his commercial driver's license due to his commission of two serious traffic offenses. That does not constitute a "voluntary quit" under the statute. The statute does not provide for disqualification from benefits for a "constructive voluntary quit." We therefore reverse the decision of the commissioner of the Employment Security Department and the superior court to the contrary.

## FACTS[1]

¶2 Mr. Bauer started work as a commercial truck driver on November 22, 1989. He knew his job required him to have a commercial driver's license (CDL). He generally drove 40 to 50 hours per week and 60,000 miles a year for work. Mr. Bauer was discharged on November 20, 2002, when his CDL was suspended by the Department of Licensing and his employer had no other work for him.

¶3 The CDL suspension was for 60 days, pursuant to RCW 46.25.090, because of two serious traffic offenses within a three-year period while driving a commercial motor vehicle. The first offense was for speeding on February 28, 2001. While driving on Interstate 90 near Moses

---

[1] These facts are based on the findings of fact made by the administrative law judge and adopted by the commissioner of the Employment Security Department. As unchallenged findings, they are verities on appeal. *Lawter v. Employment Sec. Dep't*, 73 Wn. App. 327, 332-33, 869 P.2d 102 (1994).

Lake, Mr. Bauer was under the impression that the speed limit was 65 mph Mr. Bauer did not intend to speed; he had been following another truck and was not aware that the speed limit was lowered to 45 mph on that stretch of the highway. The second offense occurred on April 8, 2002. Mr. Bauer was driving a company vehicle in a residential area looking for a particular side street on which he needed to turn. While looking for the side street, Mr. Bauer ran a red light and hit a vehicle. He was cited for running a red light. Mr. Bauer acknowledged that both citations were his own fault, but he did not feel his actions were purposeful.

¶4 Mr. Bauer sought unemployment benefits on December 9, 2002. On December 19, the Employment Security Department issued a decision allowing benefits. The employer appealed. An administrative law judge (ALJ) upheld the department's decision on March 26, 2003.

¶5 On April 17, 2003, the employer sought review of the decision in a petition to the commissioner of the department. On May 9, the commissioner modified the ALJ's order, holding that by Mr. Bauer's failure to maintain his license, a requisite of his job, he "effectively quit his employment" and his termination was deemed a "constructive quit." Comm'n Record (CR) at 69. Because he did not demonstrate good cause for "voluntarily quitting," Mr. Bauer was disqualified from benefits. CR at 69. The commissioner's decision was affirmed by the superior court on October 3, 2003. Mr. Bauer appeals.

## DISCUSSION

STANDARD/SCOPE OF REVIEW

■■ ¶6 This review is governed by the Administrative Procedure Act (APA), chapter 34.05 RCW. *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). Under the APA, the commissioner of the department is empowered to review the ALJ's decision. *Id.* at 404; RCW 50.32.080. The commissioner is the final authority for the agency's determinations on unemployment compensation.

*Tapper*, 122 Wn.2d at 404. Therefore, we review the commissioner's decision modifying the ALJ's decision. *Id.* We sit in the same position as the superior court and apply the APA standards directly to the record. *Id.* at 402.

 ¶7 We review the commissioner's conclusions of law under the error of law standard. *Cascade Nursing Servs., Ltd. v. Employment Sec. Dep't*, 71 Wn. App. 23, 29, 856 P.2d 421 (1993). The case also involves the commissioner's interpretation of RCW 50.20.050. Interpreting the meaning of a statute is a question of law subject to de novo review. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Only when the court is reviewing an agency's interpretation of an ambiguous statute is the agency's interpretation of the statute afforded deference. *Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 77, 11 P.3d 726 (2000). No deference is accorded if the agency's interpretation conflicts with the statute. *Id.* This court retains the ultimate authority to interpret a statute. *City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). Therefore, "we may substitute our interpretation of the law for that of the agency." *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 593, 90 P.3d 659 (2004).

STATUTORY INTERPRETATION

 ¶8 " '[T]he fundamental object of statutory interpretation is to ascertain and give effect to the intent of the legislature' which is done by 'first look[ing] to the plain meaning of words used in a statute.' " *Enter. Leasing, Inc. v. City of Tacoma, Fin. Dep't*, 139 Wn.2d 546, 552, 988 P.2d 961 (1999) (alterations in original) (quoting *State v. Sweet*, 138 Wn.2d 466, 477-78, 980 P.2d 1223 (1999)). "When words in a statute are plain and unambiguous, statutory construction is not necessary, and this court must apply the statute as written unless the statute evidences an intent to the contrary." *Enter. Leasing*, 139 Wn.2d at 552. "The meaning of a plain and unambiguous statute must be derived from the wording of the statute itself." *State v. Tili*, 139 Wn.2d

107, 115, 985 P.2d 365 (1999). All of the language in the statute must be given effect so that no portion is rendered meaningless or superfluous. *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999).

¶9 Related statutory provisions must be harmonized to effectuate a consistent statutory scheme that maintains the integrity of the respective statutes. *State v. Chapman*, 140 Wn.2d 436, 448, 998 P.2d 282 (2000). Statutes relating to the same subject matter will be read as complementary. *State v. Wright*, 84 Wn.2d 645, 650, 529 P.2d 453 (1974). Finally, statutes should be construed to avoid unlikely, absurd, or strained consequences. *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990).

¶10 The commissioner held:

> In failing to maintain his license, which was a requisite of his employment, the claimant effectively quit his employment. *See, e.g., In re Peters*, Empl. Sec. Comm'r Dec.2d 377 (1978). Such is akin to a *constructive quit* and is properly adjudicated pursuant to RCW 50.20.050. *See In re Harden*, Empl. Sec. Comm'r Dec.2d 843 (1994); *In re Morris*, Empl. Sec. Comm'r Dec. 801 (1969). The claimant has not demonstrated good cause for voluntarily quitting. Accordingly, he is subject to disqualification pursuant to RCW 50.20.050(1).

CR at 69 (emphasis added). The statute cited by the commissioner relevantly provides:

> An individual shall be disqualified from benefits beginning with the first day of the calendar week in which he or she has left work voluntarily without good cause and thereafter for seven calendar weeks and until he or she has obtained bona fide work in employment covered by this title and earned wages in that employment equal to seven times his or her weekly benefit amount.

Former RCW 50.20.050(1) (2002). The statute does not expressly provide for a "constructive quit."

¶11 We first examine the plain language of former RCW 50.20.050(1). The statute disqualifies a claimant if he

leaves work voluntarily without good cause.[2] Our courts have already addressed the plain meaning of leaving voluntarily:

> "[T]he phrase 'due to leaving work voluntarily' has a plain, definite and sensible meaning, free of ambiguity; it expresses a clear legislative intent that to disqualify a claimant from benefits the evidence must establish that the claimant, *by his or her own choice, intentionally, of his or her own free will, terminated the employment.*"

*Vergeyle v. Dep't of Employment Sec.*, 28 Wn. App. 399, 402, 623 P.2d 736 (1981) (emphasis added) (quoting *Allen v. CORE Target City Youth Program*, 275 Md. 69, 79, 338 A.2d 237 (1975)), *overruled on other grounds by Davis v. Employment Sec. Dep't*, 108 Wn.2d 272, 737 P.2d 1262 (1987).[3] In other words, "[a] voluntary termination requires a showing that an employee intentionally terminated her own employment." *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 393, 687 P.2d 195 (1984).

¶12 The department relies on *Vergeyle* to emphasize its argument that Mr. Bauer's poor driving habits were voluntary and of his own free will. But the *Vergeyle* court required a showing of intent to terminate the employ-

---

[2] As noted *infra* page 479, good cause is not an issue here. Nonetheless, the statute goes on to clarify that in order to show good cause, the reason for leaving must be attributable to the employment, i.e., the employee's health, safety, morals, physical ability, and fitness to do the work, and "such other work connected factors." Former RCW 50.20.050(3) (2002). The statute also sets forth specific scenarios in which an employee will not be found to have left work voluntarily without good cause. They include (1) leaving to accept a bona fide offer of other employment; (2) death, illness, or disability of the employee's immediate family; (3) relocation of the worker's husband or wife due to a mandatory employment transfer; or (4) when leaving is necessary to protect against domestic violence. Former RCW 50.20.050(2) (2002).

[3] The decision goes on to state, " 'If an employee is discharged for any reason, other than perhaps for the commission of an act which the employee knowingly intended to result in his discharge, it cannot be said that his or her unemployment was due to "leaving work voluntarily." ' " *Vergeyle*, 28 Wn. App. at 402 (emphasis omitted) (quoting *Allen*, 275 Md. at 79). This statement is dictum—unnecessary to decide the case—and therefore not controlling. *DCR, Inc. v. Pierce County*, 92 Wn. App. 660, 683 n.16, 964 P.2d 380 (1998). This and other statements in which the *Allen* court had pontificated on the constructive voluntary leaving doctrine were later found to be dictum. *Dep't of Econ. & Employment Dev. v. Taylor*, 108 Md. App. 250, 265, 270, 671 A.2d 523 (1996), *aff'd*, 344 Md. 687, 690 A.2d 508 (1997).

ment. *Vergeyle*, 28 Wn. App. at 402. No intent was evident here. In fact, the ALJ specifically found that one of the violations was not intentional. CR at 52 (finding of fact 4). That finding was not modified by the commissioner or challenged by the department.

¶13 The department implicitly argues that the legislature's use of the words "left work voluntarily" can be reasonably interpreted to include a work separation due to termination-triggering conduct. However, other statutes address benefit disqualification for work related acts or omissions in willful disregard of the employer's interest that harms the employer's business. *See* RCW 50.20.060 (disqualifying employees discharged or suspended for misconduct connected with his or her work); RCW 50.04.293 (defining misconduct as "an employee's act or failure to act in willful disregard of his or her employer's interest where the effect of the employee's act or failure to act is to harm the employer's business"). If the legislature intended to disqualify employees who unintentionally commit traffic infractions, it could have. "If a statute is plain and clear, we will not read into it things that are not there." *In re Det. of Pugh*, 68 Wn. App. 687, 691, 845 P.2d 1034 (1993) (citing *In re Pers. Restraint of Taylor*, 105 Wn.2d 67, 69, 711 P.2d 345 (1985)).

¶14 The Supreme Court of Maine addressed an almost identical statute[4] and held:

> [A]n individual leaves work "voluntarily" only when freely making an affirmative choice to do so. The clear import of the statute is that it is the intentional act of leaving employment rather than the deliberate commission of an antecedent act which disqualifies an individual from eligibility for benefits. To read the doctrine of constructive voluntary quit or constructive resignation into [the statute] is to overstep the bounds of administrative construction and usurp the legislative function.

---

[4] The statute provided, " '[An individual shall be disqualified from benefits] [f]or the week in which he left his regular employment voluntarily without good cause attributable to such employment.' " *Brousseau v. Me. Employment Sec. Comm'n*, 470 A.2d 327, 328 n.1 (Me. 1984) (alterations in original) (quoting ME. REV. STAT. ANN. tit. 26 § 1193(1)(A)).

*Brousseau v. Me. Employment Sec. Comm'n*, 470 A.2d 327, 330 (Me. 1984) (footnote omitted). That view is consistent with the jurisprudence of Washington. We cannot substitute our judgment or usurp the prerogative of the legislature. *State v. Bunting*, 115 Wn. App. 135, 139, 61 P.3d 375 (2003).

¶15 The department's interpretation is a narrow construction of the statute that would disqualify a greater number of employees. This is contrary to the statute's history of liberal construction. *Penick v. Employment Sec. Dep't*, 82 Wn. App. 30, 36, 917 P.2d 136 (1996). *But see* LAWS OF 2003, 2d Sp. Sess., ch. 4, § 1 (omitting from RCW 50.01.010 "that this title shall be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum").

¶16 Relying on *Haney v. Employment Security Department*, 96 Wn. App. 129, 137, 978 P.2d 543 (1999), the department argues, "[u]nder the 'no fault' principle, neither the employer nor the Unemployment Trust Fund administered by the Department for the benefits of persons unemployed through no fault of their own should bear the monetary consequences of action that is the fault of the claimant." Resp't's Br. at 12-13. This argument is not well taken for two reasons. First, the cited portion of *Haney* does not support the proposition directly attributed to it. *Haney* does not address monetary consequences bearing on fault at all. Second, *Haney* dealt with claimant *misconduct* under RCW 50.20.060. *Haney*, 96 Wn. App. at 134. Further, even *Haney* recognized that " '[m]ere incompetence, inefficiency, erroneous judgment, or ordinary negligence does not constitute misconduct for purposes of denying unemployment compensation.' " *Haney*, 96 Wn. App. at 139-40 (quoting *Dermond v. Employment Sec. Dep't*, 89 Wn. App. 128, 133, 947 P.2d 1271 (1997)).

¶17 Finally, the cases cited by the commissioner to justify the decision are inapposite. In *In re Peters*, No. 7-70826, Dep't of Empl. Sec. Comm'r Dec. No. 377 (Jan. 27, 1978), the claimant was held to have voluntarily quit because she would not

join a union, which was a condition of employment. She thought it would not help her economically and she had other avenues for grievances. In *In re Harden*, No. 4-18194, Dep't of Empl. Sec. Comm'r Dec. No. 843 (Dec. 9, 1994), the claimant agreed to take a drug test. He did not appear for the test although he was informed that a failure to respond to the request would be deemed a voluntary quit. In *In re Morris*, No. 70-173, Dep't of Empl. Sec. Comm'r Dec. No. 801 (Sept. 11, 1969), the claimant was enrolled in a college course and was also employed part time as a utility man. When classes recessed, his employer offered him full-time work. The claimant refused the offer because he had another offer for work with a bus company and because he did not like the job of utility man. The commissioner held: "We view the actions of the claimant as being tantamount to a constructive voluntary quit as, only because of the free exercise of choosing not to accept full-time employment, did he ultimately become unemployed." Resp't's Br. Ex. 1 (*Morris*, Comm'r Dec. No. 801). All of these cases involve affirmative and/or intentional acts with the knowledge of the consequences. That was not the case here.

CONSTRUCTIVE VOLUNTARY QUIT/LEAVING

¶18 The department urges us to implement the "constructive voluntary quit" doctrine—also referred to as "constructive voluntary leaving"—adopted by some jurisdictions,[5] which, the department recognizes, is applied under "narrow circumstances." Resp't's Br. at 10. *See, e.g., Steinberg v. Unemployment Ins. Appeals. Bd.*, 87 Cal. App. 3d 582, 151 Cal. Rptr. 133 (1978); *Yardville Supply Co. v. Bd. of Review, Dep't of Labor*, 114 N.J. 371, 377, 554 A.2d 1337 (1989). Under the doctrine, if an employee acts in a manner that might result in his discharge, and the employee is in fact discharged, the employee is deemed to have constructively quit or left his employment without good

---

[5] In 1997, the states that recognized the "constructive voluntary leaving" doctrine were California, Michigan, New Jersey, New York, and Massachusetts. *Keanini v. Akiba*, 84 Haw. 407, 411 n.6, 935 P.2d 122 (Ct. App. 1997). Those that expressly rejected the doctrine include Maryland, Maine, Connecticut, Vermont, and Hawaii. *Id.*

cause and is not entitled to unemployment benefits. *Steinberg*, 87 Cal. App. 3d at 585-87.

¶19 The department does not analyze the similarities between Washington's and California's unemployment benefits statutory schemes. Nor does it provide any compelling argument for accepting extrajurisdictional authority.

¶20 In an attempt to show that the doctrine had previously been accepted and implemented by the commissioner, the department cited one department case in which the term "constructive voluntary quit" was used. Resp't's Br. Ex. 1 (*Morris*, Comm'r Dec. No. 801). *See Martini v. Employment Sec. Dep't*, 98 Wn. App. 791, 795, 990 P.2d 981 (2000) (noting that the commission has authority under RCW 50.32.095 "to designate certain unemployment benefits decisions as precedents and to publish those precedents. Such precedents are persuasive authority in this court" (footnoted omitted)). However, in *Morris*, as previously noted, the claimant refused his employer's offer to increase his job from a part-time to a full-time position. There, the commissioner held:

> In refusing this offer of increased employment, the claimant placed himself in the position (through his voluntary choice) of being replaced as soon as an appropriate replacement could be located. . . . We view the actions of the claimant as being tantamount to a constructive voluntary quit as, only because of the free exercise of choosing not to accept full-time employment, did he ultimately become unemployed.

Resp't's Br. Ex. 1 (*Morris*, Comm'r Dec. No. 801) *Morris* is distinguishable. The claimant's free exercise of choice, intentionally made, caused the separation of his work. The commissioner also went on to engage in a "good cause" analysis.[6]

¶21 As Mr. Bauer points out, the department's strained good cause analysis in this case demonstrates the inappli-

---

[6] "Having concluded that the claimant voluntarily quit work as a matter of law, . . . [t]he sole question for disposition . . . is whether or not the claimant has established 'good cause' for failing to accept continued employment on a full-time basis." Resp't's Br. Ex. 1 (*Morris*, Comm'n Dec. No. 801).

cability of the constructive voluntary quit doctrine to the legislative scheme. *See Terry v. Employment Sec. Dep't*, 82 Wn. App. 745, 750, 919 P.2d 111 (1996); WAC 192-16-009(1) (setting forth elements claimant must prove for good cause: (1) he left due to work-connected factors; (2) the work-connected factors were sufficiently compelling to cause a reasonably prudent person to leave the employment; and (3) the employee exhausted all reasonable alternatives prior to quitting, unless exhaustion would have been futile). Mr. Bauer cannot show good cause for quitting because he did not quit. The fact that the claimant has a safety valve if he can show good cause reflects the legislature's intent to grant unemployment benefits to a claimant even if he, as a practical matter, caused his own unemployment by quitting, as long as he has a good reason for doing so.

MISCONDUCT

¶22 The department asks that, in the alternative to adopting the constructive voluntary quit doctrine, we affirm by finding that Mr. Bauer engaged in misconduct under RCW 50.20.060. That is beyond the scope of our review.

¶23 Normally, the appellate court may sustain the trial court's judgment on any theory within the pleadings and proof. *Int'l Bhd. of Pulp, Sulphite & Paper Mill Workers v. Delaney*, 73 Wn.2d 956, 971-72, 442 P.2d 250 (1968); *see* RAP 12.2. But this appeal is governed by the APA. *See* RCW 50.32.120 ("Judicial review of a decision of the commissioner involving the review of an appeals tribunal decision may be had only in accordance with the procedural requirements of RCW 34.05.570."). Our review is limited. Except in very narrow circumstances not applicable here, the APA provides the exclusive means and standards for review of the department's action. RCW 34.05.510; *Purse Seine Vessel Owners Ass'n v. State*, 92 Wn. App. 381, 388, 966 P.2d 928 (1998). There is no provision in the APA that allows a court sitting in review to affirm on any ground. *See* RCW 34.05.570 (setting forth APA judicial review provisions).

ATTORNEY FEES

¶24 Mr. Bauer has properly requested reasonable attorney fees pursuant to RCW 50.32.160, which provides that "if the decision of the commissioner shall be reversed or modified, [the claimant's attorney] fee and the costs shall be payable out of the unemployment compensation administration fund." He is entitled to reasonable attorney fees provided he complies with RAP 18.1(d). *Gibson v. Dep't of Employment Sec.*, 52 Wn. App. 211, 220-21, 758 P.2d 547 (1988).

## CONCLUSION

¶25 Mr. Bauer did not voluntarily quit his employment. The voluntary constructive quit doctrine has not been adopted by Washington courts or the legislature. The doctrine does not fit within the current statutory scheme or interpretive cases. To adopt the doctrine would usurp the legislative function. We therefore reverse the commissioner and superior court and award Mr. Bauer reasonable attorney fees.

KURTZ, J., concurs.

¶26 BROWN, J. (dissenting) — The Department of Employment Security has long-standing, established precedent in the form of Commissioner's Decisions interpreting RCW 50.20.050 to encompass constructive quit principles.[7] We must accord substantial weight to the Department's interpretation of RCW 50.20.050 because it is within the agency's area of expertise.[8] RCW 50.20.050 disqualifies employees from receiving unemployment benefits when voluntarily leaving work without good cause. Here, the uncontested facts are verities.[9]

---

[7] *In re Harden*, No. 4-18194, Dep't of Empl. Sec. Comm'r Dec. No. 843 (Dec. 9, 1994); *In re Ponti*, No. 6-09831, Dep't of Empl. Sec. Comm'r Dec. No. 270 (Jan. 27, 1977); *In re Morris*, No 70-173, Dep't of Empl. Sec. Comm'r Dec. No. 801 (Sept. 11, 1969).

[8] *Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 728, 818 P.2d 1062 (1991).

[9] *Lawter v. Employment Sec. Dep't*, 73 Wn. App. 327, 869 P.2d 102 (1994).

¶27 In my view, the Department did not err in applying existing constructive quit principles to new facts when concluding Donald Bauer acted in a way to make him ineligible for unemployment benefits. This case is not about an extension of law but the application of existing law. I would hold that when an employee understands an employment prerequisite (here, a commercial driver's license) is an imperative for continued employment, and then acts volitionally and inconsistently with maintaining that prerequisite, the employee fits within the constructive quit doctrine.

¶28 Because I disagree with the majority that, under RCW 50.20.050(1), an employee must in every case specifically intend to quit work for the statute to apply, I respectfully dissent. I would not implicitly disapprove the Department's precedents. After all, even in a criminal case, "an actor *intends* the natural and foreseeable consequences of his conduct."[10]

¶29 Accordingly, I would affirm.

Reconsideration denied June 14, 2005.

---

[10] *State v. Perez-Cervantes*, 141 Wn.2d 468, 481, 6 P.3d 1160 (2000) (emphasis added).