# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51734-5-II |
| Respondent, | |
| v. | |
| SAMMY BURRIS WEAVER, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, A.C.J. — Sammy B. Weaver appeals his conviction and sentence for one count of criminal trespass in the first degree. Weaver argues that (1) the trial court erred in providing contradictory jury instructions, relieving the State of its burden to prove that Weaver knew his entry was unlawful; (2) the crime victim penalty assessment (CVPA) violated his constitutional right to equal protection; and (3) the criminal filing fee imposed as a legal financial obligation (LFO) should be stricken.

We hold that Weaver is precluded from challenging the jury instructions, the crime victim penalty assessment fee did not violate Weaver's constitutional right to equal protection, and the criminal filing fee should be stricken. Accordingly, we affirm Weaver's conviction and the imposition of the crime victim penalty assessment fee, but we reverse the imposed criminal filing fee and remand to the trial court with instructions to strike the criminal filing fee.

FACTS

A.    INCIDENT

Someone allegedly shot at Weaver when he was retrieving his stolen motorcycle.  Because his phone had died, Weaver knocked on the door of an apartment that he thought belonged to his friends to ask for help.  When no one answered, he went inside the apartment and fell asleep.

Kyle Ulrich, the true tenant of the apartment, was outside the apartment and called the police when he heard the sound of broken glass.  The police arrested Weaver inside the apartment.  The State charged Weaver with one count of residential burglary under RCW 9A.52.025.[1]

B.    TRIAL

At trial, Ulrich testified that he had come to the apartment to move in his belongings with the permission of the landlord.  Ulrich was the only tenant in the apartment.  When he arrived, he heard the sound of breaking glass and thought someone was inside.  He called 911 and waited for law enforcement.  Deputy Ellis arrived, went inside, and handcuffed Weaver.

Ulrich walked into the apartment with Deputy Ellis.  He saw in the living room a pillow, a bag, a bottle, and a window that had been smashed.

George Early, the manager of the property, testified that he had only once previously rented out the apartment to someone who stayed for one night.  That tenant had a mental breakdown and moved.  Early did not remember the name of that person.  This was three weeks prior to his rental

---

[1]  RCW 9A.52.025 states, "(1) A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle."

agreement with Ulrich. Early also testified that he had never given Weaver permission to enter the property.

Deputy Ellis of the Mason County Sheriff's Office responded to Ulrich's 911 call. He testified that upon reaching the apartment, he knocked on the door and identified himself as being from the sheriff's office. When no one answered, he went inside.

Inside, Deputy Ellis observed a backpack and a cell phone plugged into an outlet, which belonged to Weaver. He then saw Weaver lying on the floor. Deputy Ellis placed Weaver in handcuffs while he was still lying on the floor.

After being placed under arrest, Weaver told Deputy Ellis that

> he arrived there during the night and he was tired, didn't have anywhere to sleep and he knocked on the door and didn't get any response. Then he looked inside and he didn't see any furniture inside and he said he walked to the back and found an open door and walked inside the residence.

Verbatim Report of Proceedings (VRP) at 85. Deputy Ellis testified that it was impossible to get in through the back door but saw an open window. Deputy Ellis did not see a broken window or broken glass but opined that Weaver entered through the window. Additionally, the front door was locked when he entered.

Weaver testified that he had been visiting friends on the same street as the apartment. Another friend was "harboring the guy that stole [his] motor bike." VRP at 98. When Weaver took the bike back, someone shot a bullet at him. Weaver tried to call the police, but his phone was dead, so he went to the apartment of another friend to see if he could use that friend's phone.

3

Weaver knocked on the door of his friend's apartment where he was eventually arrested. The door to the apartment was not latched and opened. He entered and locked the door behind him.

> Once inside, Weaver
>
> noticed that it was empty in the process of being remodeled or something and uh upon no answer from my calling out, I thought my friends may have been at the store or just out for a minute and be right back. So, I thought well, I'll just go in, lock the door behind me so in case this guy comes back down the street after me and wait and see if they show up and I realized the power was on.

VRP at 102. He plugged his phone into an outlet so he could call for help. He then fell asleep and was woken up by a knock at the door.

Weaver also testified that after he was arrested, he told Deputy Ellis, "my bike was stolen and I just retrieved it um I was here to try to call for help and uh I did not break in. The door was not secured when I knocked on it." VRP at 103. Weaver stated that he did not steal anything or have any intention of stealing anything inside. Weaver did not know that his friends no longer lived there. The last time he had spoken to his friends was nine months to a year earlier. Weaver's friends were a father and a son (Phillip Sr. and Phillip Jr.), and the father had had a mental breakdown. Weaver admitted that he did not have permission to be in the apartment. Weaver also said that he would not have entered any other house and only went inside out of fear.

C.    JURY INSTRUCTIONS

The parties agreed to include the lesser included offense of criminal trespass in the first

degree[2] in the jury instructions.  Therefore, the trial court instructed the jury on residential burglary

and the lesser included offense of criminal trespass in the first degree.  The court also instructed

the jury that

> [a] person enters or remains unlawfully in or upon premises when he is not
> then licensed, invited, or otherwise privileged to so enter or remain.

Clerk's Papers (CP) at 42. The court further instructed the jury that

> [t]o convict the defendant of the crime of criminal trespass in the first
> degree, each of the following elements of the crime must be proved beyond a
> reasonable doubt:
>
> (1) That on or about August 19, 2017, the defendant knowingly entered or
> remained in a building;
>
> (2) **That the defendant knew that the entry or remaining was unlawful;**
> and
>
> (3) That this act occurred in the State of Washington.
>
> If you find from the evidence that each of these elements has been proved
> beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all of the evidence, you have a
> reasonable doubt as to any one of these elements, then it will be your duty to return
> a verdict of not guilty.

CP at 47 (emphasis added). The court's definitional instruction for "knowingly" stated:

> A person knows or acts knowingly or with knowledge with respect to a fact,
> circumstance, or, result when he is aware of that fact, circumstance, or result. **It is**

---

[2]  RCW 9A.52.070 states, "(1) A person is guilty of criminal trespass in the first degree if he or she knowingly enters or remains unlawfully in a building. (2) Criminal trespass in the first degree is a gross misdemeanor."

**not necessary that the person know that the fact, circumstance, or result is defined by law as being unlawful or an element of a crime.**

If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

CP at 48 (emphasis added). Neither party objected to the court's instructions.

D.     VERDICT AND SENTENCE

The jury found Weaver not guilty of residential burglary and guilty of criminal trespass. The trial court sentenced Weaver to 364 days of jail with 15 days converted to 120 hours of community service. The court also imposed a $250 criminal filing fee and a $500 CVPA.

ANALYSIS

A.     JURY INSTRUCTIONS

Weaver argues that the to-convict instruction for first degree criminal trespass contradicts the definition of knowledge instruction, resulting in the State being relieved of its burden to prove Weaver knew his entry into the apartment was unlawful beyond a reasonable doubt. Weaver acknowledges that he did not object to the jury instructions but argues that this court should address this issue because it is an error of constitutional magnitude. We disagree.

Generally, a defendant cannot challenge a jury instruction on appeal if he did not object to the instruction in the trial court. *State v. Salas,* 127 Wn.2d 173, 181–82, 897 P.2d 1246 (1995). However, a defendant can raise such an error for the first time on appeal if the instruction involves a manifest error affecting a constitutional right. RAP 2.5(a)(3); *Salas,* 127 Wn.2d at 182.

6

Here, Weaver neither argues nor shows that the instructional error was a manifest error. He fails to even cite to RAP 2.5(a)(3) in his opening brief. Therefore, we do not address Weaver's challenge. *See State v. Cox*, 109 Wn. App. 937, 943, 38 P.3d 371 (2002) (when an appellant fails to provide argument or authority, this court is not "required to construct an argument on behalf of appellants").

Additionally, because Weaver proposed the jury instruction, he is precluded from challenging it on appeal. The invited error doctrine "prohibits a party from 'setting up error in the trial court and then complaining of it on appeal.'" *State v. Armstrong*, 69 Wn. App. 430, 434, 848 P.2d 1322 (quoting *State v. Young*, 63 Wn. App. 324, 330, 818 P.2d 1375 (1991)), *review denied*, 122 Wn.2d 1005 (1993). Under the invited error doctrine, "even where constitutional rights are involved, we are precluded from reviewing jury instructions when the defendant has proposed an instruction or agreed to its wording." *State v. Winings*, 126 Wn. App. 75, 89, 107 P.3d 141 (2005).

Here, Weaver proposed the instruction on the lesser included offense of first degree criminal trespass; therefore, any error in the instruction was invited, and we do not review his challenge.

B.     CRIME VICTIM PENALTY ASSESSMENT FEE

Weaver argues that the CVPA authorized by RCW 7.68.035(1)(a) violated his constitutional right to equal protection. We disagree.

1.     Legal Principles

The Fourteenth Amendment to the United States Constitution and article I, section 12 of the Washington Constitution guarantee equal protection under the law. "Equal protection requires that similarly situated individuals receive similar treatment under the law." *Harris v. Charles*, 171

Wn.2d 455, 462, 256 P.3d 328 (2011). The threshold requirement of an equal protection challenge is that a defendant "must establish that he received disparate treatment because of membership in a class of similarly situated individuals and that the disparate treatment was the result of intentional or purposeful discrimination." *State v. Osman*, 157 Wn.2d 474, 484, 139 P.3d 334 (2006).

The appropriate level of review in equal protection claim depends on the nature of the classification or the rights involved. *State v. Hirschfelder*, 170 Wn.2d 536, 550, 242 P.3d 876 (2010). We apply a rational basis review unless the State action involves suspect classifications, fundamental rights, semi-suspect classifications, or important rights. *Id*.

Here, Weaver concedes that he is not a member of a suspect or semi-suspect class and that the payment of a CVPA does not involve a fundamental or important right. Therefore, we apply rational basis review.

Rational basis review is a highly deferential standard, and we will uphold a statute under this standard unless its provisions are wholly irrelevant to the achievement of legitimate State objectives. *In re Det. of Stout*, 159 Wn.2d 357, 375, 150 P.3d 86 (2007). Rational basis requires only that the statute's means be rationally related to a legitimate State goal, and not that the means be the best way of achieving that goal. *State v. Manussier*, 129 Wn.2d 652, 673, 921 P.2d 473 (1996), *cert. denied*, 520 U.S. 1201 (1997).

2.     No Equal Protection Violation

Weaver argues that his right to equal protection was violated because there is no reasonable ground for distinguishing between those who are convicted of a gross misdemeanor in superior court versus those who are convicted of the same charge in a court of limited jurisdiction. We disagree.

8

Superior courts have original jurisdiction "in all criminal cases amounting to felony" and "in all cases of misdemeanor not otherwise provided for by law." Wash. Const., art. IV § 6; RCW 2.08.010. District courts, on the other hand, have "[c]oncurrent [jurisdiction] with the superior court of all misdemeanors and gross misdemeanors." RCW 3.66.060.

In determining constitutionality, the relevant class depends on the relevant statute. "The first task in determining whether [a statute] is constitutional is defining the class affected by the statute. The Legislature has broad discretion in defining classes in social and economic statutes. . . . Classes defined by the Legislature are presumed constitutional." *State v. Sigler,* 85 Wn. App. 329, 334, 932 P.2d 710 (1997) (citation omitted); *see also Ford Motor Co. v. Barrett,* 115 Wn.2d 556, 565, 800 P.2d 367 (1990); *Conklin v. Shinpoch,* 107 Wn.2d 410, 417, 730 P.2d 643 (1986)).

We look to the statute's plain language in order to give effect to legislative intent, giving statutory terms their plain and ordinary meaning. *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). We do not engage in judicial interpretation of an unambiguous statute. *State v. Thorne*, 129 Wn.2d 736, 762–63, 921 P.2d 514 (1996). A statute is ambiguous when the language is susceptible to more than one reasonable interpretation. *State v. Jacobs*, 154 Wn.2d 596, 600–01, 115 P.3d 281 (2005).

Here, the statute authorizing the superior court to impose a CVPA provides:

When any person is found guilty in any superior court of having committed a crime, except as provided in subsection (2) of this section, there shall be imposed by the court upon such convicted person a penalty assessment. The assessment shall be in addition to any other penalty or fine imposed by law and shall be five hundred dollars for each case or cause of action that includes one or more convictions of a felony or gross misdemeanor and two hundred fifty dollars for any case or cause of action that includes convictions of only one or more misdemeanors.

RCW 7.68.035(1)(a). The purpose of the CVPA is to "provide comprehensive services to victims and witnesses of all types of crime with particular emphasis on serious crimes against persons and property." RCW 7.68.035(4)(a).

The plain language of the statute unambiguously makes clear that the legislature intended the relevant class to be those convicted of crimes in superior court, not a class of those convicted of gross misdemeanors as Weaver argues. And there is a rational basis for imposing a CVPA on those convicted in superior court because the legislature could rationally have believed that since superior court convictions are generally more serious (felonies) than convictions in a court of limited jurisdiction (gross misdemeanors and misdemeanors), a class consisting of those convicted in a court dealing with more convictions for more serious crimes should fund a victim's compensation program that places particular emphasis on serious crimes.[3] Therefore, because there is a rational basis for the legislature to impose a CVPA on those convicted of a crime in superior court, we hold that RCW 7.68.035 does not create disparate treatment between those convicted in superior court and those tried in courts of limited jurisdiction.

Moreover, in order to prevail on an equal protection claim, Weaver must also provide evidence of intentional or purposeful discrimination. *Osman,* 157 Wn.2d at 484. Weaver has failed to even address that issue. Thus, we affirm the imposition of the CVPA.

---

[3] Weaver argues that the only distinction between the "class" of those convicted of misdemeanors in superior court and those convicted of misdemeanors in a court of limited jurisdiction is the prosecutor's decision to file a charge in a court of limited jurisdiction as opposed to the superior court. However, Weaver ignores the jurisdictional authority of the two levels of courts and the fact that he was charged with residential burglary, a felony, which required the prosecutor to file Weaver's criminal charge in superior court. *See* Wash. Const, art. IV § 6.

C.      CRIMINAL FILING FEE

Weaver argues that the imposed criminal filing fee should be stricken because he is indigent.[4]  The State concedes that the imposed criminal filing fee should be stricken.

Legislative amendments to the LFO statues in 2018 prohibit sentencing courts from imposing on indigent defendants a criminal filing fee.  RCW 36.18.020(2)(h); *State v. Ramirez*, 191 Wn.2d 732, 746-47, 426 P.2d 714 (2018).  Our Supreme Court has held that the amendments apply prospectively and are applicable to cases pending on direct review and not final when the amendment was enacted.  *Ramirez*, 191 Wn.2d at 747.

Here, there is no dispute that Weaver is indigent.  Therefore, we reverse the imposed criminal filing fee and remand to the trial court with instructions to strike the criminal filing fee.

CONCLUSION

We affirm Weaver's conviction and the imposition of the crime victim penalty assessment fee, but reverse the imposed criminal filing fee and remand to the trial court with instructions to strike the criminal filing fee.

---

[4]  Weaver initially argued that the trial court erred in acting without statutory authority when it imposed a $250 criminal filing fee, instead of a $200 filing fee under RCW 36.18.020(2)(h).  In its response, the State agreed with Weaver that the amount should be reduced to $200.  It argued in the alternative that the filing fee should be stricken all together because Weaver is statutorily indigent.  In his reply brief, Weaver agreed that the filing fee should be stricken because Weaver is statutorily indigent.

No. 51734-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Cruser, J.